UTZURRUM LAW OFFICES, A.P.C.
Joe Utzurrum, Esq.    9834
7 Waterfront Plaza
500 Ala Moana Boulevard, Suite 400
Honolulu, Hawai'i 96813
Tele 808.587.7070
Email joe@ulawoffices.com

11620 Wilshire Blvd., Suite 900
Los Angeles, California 90025
Tele 310.887.1837

Attorneys for Plaintiff, DANNY
GALLAGHER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DANNY GALLAGHER, | ) CIVIL NO. 1:18-cv-00364-LEK-KJM |
| Plaintiff, | ) |
| vs. | ) FOURTH AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |
| MATERNITYWISE INTERNATIONAL LLC, ANNE CROUDACE, JANE HOPAKI, EMILEE SALDAYA, RACHAEL AUGHENBAUGH, JENNIFER CHIDESTER, STEPHANIE BYERS, BETHANY KIRILLOV, SAMANTHA LAJOIE, AERIN LUND, KATE PAVLOVSKY, CHANNA JAYDE WALZ, MADDISON SISLEY BOULTER, ESME WHRITENOUR,  ADRIANNA BROOKS, NICOLETTE RAYMOND, JULIE BELL, CARA GWIZD, HOLLY | ) 1. Libel ) 2. Libel Per Se ) 3. Trade Libel ) 4. False Light ) 5. Intentional Infliction of Emotional Distress ) 6. Negligent Infliction of Emotional Distress ) 7. Permanent Injunction ) 8. Declaratory Relief |

1

Fourth Amended Complaint and
Demand for Jury Trial

LEPPARD-WESTHAVER, ELOISE )
VICTORIA, VIVIAN CHAU BEST, )
JANE DOE ONE, JANE DOE )
THREE, and DOES 1-10, inclusive, )
                                                      )
                            Defendants.          )

Plaintiff, DANNY GALLAGHER, an individual, hereby, by and through its counsel of record, allege as follows:

## I.JURISDICTION AND VENUE

1.      This court has original jurisdiction under 28 U.S.C. §1332, because all plaintiff is a citizen of the state of Hawai'i and all defendants are citizens of the states other than the state of Hawai'i.  Additionally, the amount in controversy in this matter exceeds $75,000.00, exclusive of costs and interests as more specifically plead *infra*.

2.      Venue is proper under 28 U.S.C. §1391(b)(1), because all defendants reside in the Federal District of Hawai'i and further proper under 28 U.S.C. §1391(b)(2), because a substantial amount of the events and omissions giving rise to the claim occurred in the Federal District of Hawai'i, and otherwise were knowingly directed at harming a citizen of the State of Hawai'i and the citizens ability to take part in his occupation, as more specifically plead *infra*.

## II.PARTIES

3.      Plaintiff, DANNY GALLAGHER (**Gallagher** or **Plaintiff**) is, and was, at all times relevant, domiciled in Hawai'i and thus a citizen of Hawai'i.

4.      Defendant, MATERNITYWISE INTERNATIONAL LLC (**MATWISE**), is, and was, at all relevant times, a limited liability company, acquiring its charter under the laws of the state of New York all of its partners and members being citizens of the State of Texas and New York.

2

5.    Defendant, Anne Croudace (**CROUDACE**) is, and was at all relevant times, domiciled in the State of New York and thus a citizen of the State of New York.

6.    Defendant, Jane Hopaki (**HOPAKI**), named and referred to in the prior complaints as, "Elizbeth Anoatubby", sometimes using the name "Jane Yaakni Hopaki" and Elizabeth Anoatubby, is, and was at all relevant times, domiciled in the State of Minnesota and thus a citizen of the State of Minnesota.

7.    Defendant, Emilee Saldaya (**SALDAYA**), sometimes using the identity Emily Benner and Emilee Saldaya is, and was at all relevant times, domiciled in the State of Colorado and thus a citizen of the State of Colorado.

8.    Defendant, Rachael Aughenbaugh (**AUGHENBAUGH)**, named and referred to in the prior complaints as, "Rachael Brown", sometimes using the name "Rachael Phoenix", "Rachael BirthKeeper Phoenix" and Rachael Brown is, and was at all relevant times, domiciled in the State of Colorado and thus a citizen of the State of Colorado.

9.    Defendant, Jennifer Chidester (**CHIDESTER**) named and referred to in the prior complaints as, "Jenna Chidester", sometimes using the name "Jenna Chidester" is, and was at all relevant times, domiciled in the State of Oregon and thus a citizen of the State of Oregon.

10.    Defendant, Stephanie Byers (**BYERS**), named and referred to in prior complaints as "Stephanie Gilbert"**,** sometimes using the name "Stephanie BYERS", is, and was at all relevant times, domiciled in the State of Iowa and thus a citizen of the State of Iowa.

11.    Defendant, Bethany  Kirillov (**KIRILLOV**), named and referred to in the prior complaints as ""Bethany Kirillova", sometimes using the identity Bethany Kirillova, is, and was at all relevant times, domiciled

3

in the State of Alaska and thus a citizen of the State of Alaska

12.  Defendant, Samantha Lajoie (**LAJOIE**) is, and was at all relevant times, domiciled in the State of North Carolina and thus a citizen of the State of North Carolina.

13.  Defendant, Aerin Lund (**LUND**) is, and was at all relevant times, domiciled in the State of Utah and thus a citizen of the State of Utah.

14.  Defendant, Kate Pavlovsky (**PAVLOVSKY**) is, and was at all relevant times, domiciled in the State of Texas and thus a citizen of the State of Texas.

15.  Defendant, Channa Jayde Walz (**WALZ**) is, and was at all relevant times, domiciled in the State of Arizona and thus a citizen of the State of Arizona.

16.  Defendant, Madison Sisley Boulter (**BOULTER**), named and referred to in the prior complaints as "Maddison Weikle", sometimes using the social media identity "Maddie Boulter", is, and was at all relevant times, domiciled in the State of North Carolina and thus a citizen of the State of North Carolina.

17.  Defendant, Esme Whritenour (**WHRITENOUR**), is, and was at all relevant times, domiciled in the State of Oregon and thus a citizen of the State of Oregon.

18.  Defendant, Adrianna Brooks (**BROOKS**) named and referred to in the prior complaints as "Jane Doe Two" using the social media identity "Aydree Ahnah" and sometimes known as Adrianna Hutchinson, is, and was at all relevant times, domiciled in the State of California and thus a citizen of the State of California.

19.  Defendant, JANE DOE ONE, using the social media identity "Jess Young" (**YOUNG**), is, and was at all relevant times, not domiciled in the State of Hawai'i and thus not a citizen of the State of Hawai'i.

Fourth Amended Complaint and
Demand for Jury Trial

Plaintiff will amend the complaint when the true name of JANE DOE ONE is ascertained.

20. Defendant, JANE DOE THREE, using the social media identity "Marie-Soleil Deschamps" (**DESCHAMPS**), is, and was at all relevant times, not domiciled in the State of Hawai'i and thus not a citizen of the State of Hawai'i. Plaintiff will amend the complaint when the true name of JANE DOE THREE is ascertained.

21. Defendant, Nicolette Raymond (**RAYMOND**) is, and was at all relevant times, domiciled in Ontario, Canada and thus a citizen of Canada.

22. Defendant, Julie Bell (**BELL**), sometimes using the social media identity "Melbourne Doula Birth Support", is, and was at all relevant times, domiciled in Victoria, Australia and thus a citizen of Australia.

23. Defendant, Cara Gwizd (**GWIZD**), is, and was at all relevant times, domiciled in Canada and thus a citizen of Canada.

24. Defendant, Holly Leppard-Westhaver (**LEPPARD-WESTHAVER**), sometimes using the name "Hollie Michelle" is, and was at all relevant times, domiciled in Canada and thus a citizen of Canada.

25. Defendant, Eloise Victoria (**VICTORIA**), is, and was at all relevant times, domiciled in New South Wales, Australia and thus a citizen of Australia.

26. Defendant, Vivian Chau Best (**BEST**), is, and was at all relevant times, domiciled in the State of California and thus a citizen of the State of California.

27. The full extent of the facts linking the fictitiously named designated defendants with the claims alleged herein is unknown to plaintiff, or the true names and/or capacities, whether an individual, plural, corporate, a partnership, an associate, or otherwise, of defendants,

Fourth Amended Complaint and
Demand for Jury Trial

DOES 1 through 10, inclusive, are unknown to plaintiff. Plaintiff therefore sues defendants by such fictitious names. Plaintiff is informed and believe, and thereon alleges that each of the defendants designated herein as a DOE is negligently, wantonly, recklessly, tortiously, intentionally, strictly and unlawfully responsible in some manner for the events and happenings herein referred to, and did negligently, wantonly, recklessly, tortiously, intentionally, strictly and unlawfully proximately cause injuries and damages thereby to plaintiff, as herein alleged. Plaintiff will amend this Complaint to allege said defendants' true names and capacities when same have been ascertained. Each reference to "defendant," "defendants," or a specifically named defendant, refers to all defendants including those sued under fictitious names.

28.   At all times herein mentioned, each defendant was the agent, principal, master, servant, employer, employee, partner and joint venturer of the other defendants, and in doing the things hereinafter mentioned, was acting in the scope of his, her, or its authority as such, and with the permission and consent of the other defendants, and each of them.

### III.FACTS COMMON TO ALL CAUSES OF ACTION

32.   Each, and every, defamatory statement described herein has gone "viral"; that is to say that the described defamatory statements have been shared, forwarded, commented on and used hundreds to thousands of times on, and in, the same social media platform the defamatory statement(s) were originally made or posted, and also on, and in, other social media platforms different from the platform in which the defamatory statements were originally made or posted. The viral nature of the defamatory statements and subject matter was of

6

no doing of plaintiff.  Gallagher has made numerous and every reasonable effort to prevent the further dissemination of the lies that have been spread about him, lies that were intended to prevent Gallagher from engaging in his constitutional right to pursue the lawful occupations and professions that he has been engaged in the past few years, including as a photographer and a doula.

33.   The herein unjustifiable acts of the defendants have been as successful as each of the defendants intended, that is to say, that each of the defendant'' acts have irreparably damaged Gallagher's reputation, personal relationships, business relationships, income, emotional well-being, and financial well-being, *inter alia*.

34.   MATWISE is a business that promotes the training of persons who want to become doulas, who are persons who provide assistance during the childbirth process.  Although no state requires government mandated training or certification, for a large fee MATWISE provides "certification" through the completion of its training courses. MATWISE characterizes its "graduates" as "certified" to create and manufacture a public perception that paying for and completing a series of MATWISE courses will somehow legitimize its graduates. In fact, there is no government-regulated medical program or any major or minor United States educational institution that offers certification to be a doula, or call oneself a doula. Any person who wants to call himself or herself a doula may do so without regulatory oversight. MATWISE and its principals make and enjoy a profit from its perceived regulatory behavior.

35.   On information and belief, the business form of MATWISE is a limited liability company.

36.   CROUDACE is a principal of MATWISE and has been "certified"

7

through MATWISE as a

(1)"MaternityWise Certified Labor Doula Trainer"

(2)"MaternityWise Certified PostPartum Doula Trainer"

(3)"MaternityWise Placenta Encapsulation Certification"

(4)"MaternityWise Certified Lactation Support and Educator Trainer"

37. CROUDACE conducts business through numerous fictitious business names, including, "Maternity Wise", "Maternity Wise International", "MaternityWise Intl", "MaternityWiseInternational", "Maternity Wise Institute", *inter alia*.

38. MATWISE conducts business through fictitious business names, including, "Maternity Wise", "MaternityWise Intl", "MaternityWiseInternational", "Maternity Wise Institute", *inter alia*.

39. CROUDACE and MATWISE use the web address http://www.maternitywise.com, the Facebook page https://www.facebook.com/pg/maternitywise.intl/about/?ref=page_internal and various social media discussion groups to market to those intending on become "certified" doulas through its program. CROUDACE and MATWISE reach out to the residents of every state and country, including the State of Hawai'i, to find candidates, i.e., clients and students, for its certification programs that CROUDACE and MATWISE derive income.

40. In order to lure candidates to paying for its programs and classes, CROUDACE and MATWISE use the fact that they have in the past, and in the future, provided training in Hawai'i and do so to capitalize on the natural beauty and tourism in Hawai'i.

41. Gallagher exchanged valuable consideration and did undergo the certification program provided by CROUDACE and MATWISE in Hawai'i and did so through CROUDACE's and MATWISE's marketing

Fourth Amended Complaint and
Demand for Jury Trial

efforts in the State of Hawai'i.

42. Gallagher operated, and operates, a Hawai'i business in photography and also is employed as a doula.

**A.** **Defendants' use of Facebook to target Gallagher in Hawai'i with the knowledge that Gallagher lives and works in Hawai'i.**

43. Facebook is a social networking website wherein users create a customized profile to connect with other users or visitors by "posting" communications, including photos and documents, for other users to read and review.  As of January 2018 Facebook had more than 2.2 billion monthly active users. All defendants were aware of Facebook's extensive reach and the "viral" effect that defendants' communications could have; in fact each and all herein defendants intended on having their communications "go viral", "viral" meaning that a communication is republished thousands of times in a short period of time.

44. Herein "users" and "visitors" can be used interchangeably. "Users" of Facebook and Facebook Pages (*infra*) generally refer to Facebook subscribers who have their own personal or Facebook Pages accounts, whereas "visitors" are generally those persons who are not Facebook subscribers. Facebook subscribers' pages that are made "public" can be accessed by any person, whether or not the person has a Facebook account. "Private" Facebook accounts are accessible to those persons who also have a Facebook account, i.e., between users, and consent is given to view the pages associated with the account.

45. Facebook also allows persons to create a business page through "Facebook Pages".  Facebook represents, *inter alia*, on its creation page that Facebook Pages are used to "[c]reate [a] beautiful online

Fourth Amended Complaint and
Demand for Jury Trial

home for your business" and that the pages "[i]ncrease awareness of your business with a free online presence …", also "[c]reating a Facebook Page allows the more than 2 billion people on Facebook to discover your business – think of your Page as a digital storefront…" and "2/3 of Facebook users across all countries surveyed say they visit the Page of a local business at least once a week."

46.   On all dates relevant, including 2018, Gallagher maintained a business page on Facebook called "Danny the Doula", i.e., separate from his personal identity page.

**1.    The Danny the Doula and Maternity in Motion Facebook Business Pages are patently operated by a person who lives and works in Hawai'i and directs its business to serve the citizens of Hawai'i or those who desire a Hawaiian themed audio visual product or assisted childbirth in Hawai'i.**

47.   The Danny the Doula business page (**DTD**), like many business websites, have subpages that categorize certain aspects of the business, i.e., akin to visiting different departments of a business, that cater to the varying interactive interests of users.

48.   The DTD business page has seven subpages, specifically Home, Posts, Reviews, Photos, About, Community and Info and Ads.

49.   When interacting with DTD, the Home page is the first page that a user or visitor must interact with before accessing DTD.  The Home page uses Hawaiian words and phrases, for example, "Aloha Kakou", "Mahalo", "Aloha" and lists Gallagher's 808 phone number, communicating, signifying and establishing that Gallagher lives in Hawai'i and that the business is a Hawai'i based business.

50.   The DTD business page also directs users and visitors to "[p]lease

Fourth Amended Complaint and
Demand for Jury Trial

support me by liking and subscribing to my sister page for all maternity and birth visuals @Maternity in Motion! Mahalo!," including a link to Gallagher's other Facebook Pages (business) site maternityinmotion.

51.   The DTD Home page also has another separate link to www.maternityinmotion.com.

52.   The Maternity in Motion business page (**MIM**) displays Gallagher's audio-visual work and uses such to promote his photography business. MIM has samples of Gallagher's work providing photos and videos of pregnant women immersed in the backdrops of Hawai'i, for example Haleakala, Maui, Makena, Maui, Kihei, Maui, and St. Louis Heights, Oahu. The videos and photographs are overwhelmingly of scenes in Hawai'i that cannot be mistaken as to location because of the express statement of where the photo shoots took place. Gallagher's Hawai'i area code phone number is displayed on every subpage on MIM.

53.   The connection of DTD and MIM are not separable and every person who visited DTD or MIM were fully aware that Gallagher was operating a doula and photography business that was based in the state of Hawai'i and was primarily reaching out to and for the business of Hawaiian citizens or whoever wanted a Hawaiian experience.

2.   **Defendants' knowledge that Gallagher lives and works in Hawai'i by those who interacted with Docker's post on the DTD Reviews page on June 3, 2018 and after.**

54.   After reviewing the Home page of DTD, every defendant herein then visited the DTD Reviews page to post defamatory statements about Gallagher and his businesses.

11

55. The "Reviews" page is a page expressly made to review the business, in the instant case, Gallagher doing business as a doula and photographer through DTD.

56. Each and every defendant was fully aware that a comment, reply, emoji, post, inter alia, on DTD or MIM would affect Gallagher's reputation as a doula and photographer and consequently his photography and doula business.

57. One of the first posted reviews was a post on June 3, 2018 made by Chrystal Docker (**DOCKER**). DOCKER defended Gallagher's integrity, transparency and high level of professionalism, including that the below described false accusations made by MATWISE and CROUDACE were false and not supported by any evidence. (attached hereto as Exhibit "2" and incorporated herein by this reference is a true and correct copy of the pertinent part DOCKER's post defending Gallagher and the following replies. It should be noted however that others might have deleted a reply prior to making the herein copy or otherwise prior to when the DTD was disabled to prevent further libel.)

58. Soon after DOCKER's positive review, Facebook placed the review above all other reviews so that any and all visitors of DTD would have to first read DOCKER's review and subsequent posts by others including DOCKER's statement that Gallagher lived in Hawai'i.

59. Defendants, YOUNG and AUGHENBAUGH, with AUGHENBAUGH using the identity "Rachael BirthKeeper Phoenix", responded and posted laughing emojis to DOCKER'S review, acknowledging that YOUNG and AUGHENBAUGH disagreed with DOCKER's statement.

60. After DOCKER's post, defendant BOULTER sarcastically replied with the question, "[y]ou have personally met him?"

12

61. Defendant, WALZ, responded and posted a thumbs-up emoji to BOULTER's question, thereby apparently approving of the question.

62. DOCKER replied to BOULTER, "No he is in Hawai'i and I am stateside. But know him from birth group, talking on the phone, chatting online, etc. I've also talked to other people who know him and he has plenty of people backing him up. And most of the people who are coming out against him, don't even know him, have never used his services, etc. They are only going by what they've heard today from these rumors being spread. Very petty, immature and unprofessional."

63. Immediately after DOCKER's reply that Gallagher lived in Hawai'i and in the same string of responses to BOULTER's sarcastic question, YOUNG posted a false statement defaming Gallagher, "[m]ost of the women coming out against him HAVE dealt with him ....Victim dismissal is nothing new," although the truth is that with the exception of CROUDACE, none of the accusers and persons committing defamation ever met Gallagher or have "dealt with him". YOUNG's response in accentuating "HAVE" attempted to directly refute DOCKER's statement that Gallagher's accusers have met him. As such, YOUNG acknowledges the review of DOCKER's post, establishing YOUNG's knowledge that YOUNG was aware that Gallagher lived in Hawai'i.

64. Defendant, WALZ and HOPAKI responded and posted a thumbs-up emoji to YOUNG's defamatory statement, apparently approving of YOUNG's defamation and established knowledge of DOCKER's statement that Gallagher lived in Hawai'i.

65. Continuing in the same conversation, Jacob Hildreth, posted a response to the DOCKER's second post that Gallagher lived in

13

Hawai'i, "[s]o …you don't know him then. First Sentence of your review is a lie." Jacob Hildreth's response established that Jacob Hildreth did read the first sentence of DOCKER's statement that Gallagher lived in Hawai'i.

66.   Defendant, YOUNG posted a thumbs-up emoji to Jacob Hildreth's statement acknowledging that YOUNG read the first sentence of DOCKER's statement that Gallagher lived in Hawai'i and subsequent response by Jacob Hildreth.

67.   Jordan Ashley Hocker (**Hocker**) then posted a direct response to DOCKER's post of whether DOCKER ever had a face-to-face meeting with GALLAHER, "Chrystal Docker You haven't actually met him but you're attempting to say women who had a direct inappropriate experiences are just trying to discredit him by coming forward? …That literally makes no sense."  Hocker apparently acknowledges that Hocker read DOCKER's second post including the first sentence of DOCKER's statement that Gallagher lived in Hawai'i.

68.   Defendant, YOUNG posted a thumbs-up emoji to Hocker's reply.

69.   Defendant, AUGHENBAUGH using the identity "Rachael BirthKeeper Phoenix" then posted, "[s]o sorry he is grooming you too!" which was a derogatory statement directed at DOCKER who in the string of posts and replies established that Gallagher lived and worked as a photographer and doula in Hawai'i. That is to say, AUGHENBAUGH's statement acknowledges that AUGHENBAUGH was following along and reading DOCKER's posts including the first sentence of DOCKER's second post that Gallagher lived in Hawai'i.

70.   "Grooming" becomes a prevalent theme of attacks made upon all those supporting Gallagher, that is to say, all those who support Gallagher have lost all volition to defend against Gallagher's sexually

predatory behavior and the support was without merit expanding the scope of the defamation by discrediting and making factually false any and all positive statements about Gallagher and his photography and doula business.

71.   Defendants, YOUNG and WALZ posted thumbs-up emojis to AUGHENBAUGH's statement.

72.   Continuing in the string of replies, defendant, CHIDESTER, posted, "Ok even if you don't believe the handful of women who have come forward about him [meaning Gallagher] making them feel fetishized about him taking partially nude maternity pics but never actually providing the edited photos etc. …" That is to say, CHIDESTER's statement acknowledges that CHIDESTER was following along and reading DOCKER's posts including the first sentence of DOCKER's second statement that Gallagher lived in Hawai'i because CHIDESTER's post refuted the content of DOCKER's post.

73.   Defendant, YOUNG posted a thumbs-up emoji to CHIDESTER's statement.

74.   Elizabeth Geftakys (**Geftakys**) using the identity "Becca Russell" then posted the entire defamatory memorandum created and prepared by MATWISE and CROUDACE, described below and attached as Exhibit "1". That is to say, Geftakys' post acknowledges that Geftakys was following along and reading DOCKER's posts including the first sentence of DOCKER's second statement that Gallagher lived in Hawai'i. Geftakys' post was not intended to standalone but used to refute DOCKER's assertions supporting Gallagher.

75.   Defendants, YOUNG, CHIDESTER and GWIZD posted thumbs-up emojis to Geftakys' statement, thereby acknowledging that YOUNG, CHIDESTER and GWIZD were following along in the conversation

Fourth Amended Complaint and
Demand for Jury Trial

including DOCKER's statement that Gallagher lived in Hawai'i.

76.   As such, defendants who participated in the first string of replies that originated from DOCKER's two posts on June 3, 2018 that established that Gallagher lived and worked as a photographer and doula in Hawai'i were fully aware that Gallagher lived and worked as a photographer and doula in Hawai'i. Specifically, defendants, AUGHENBAUGH, WALZ, BOULTER, YOUNG, HOPAKI, CHIDESTER and GWIZD were expressly aware that Gallagher lived and worked as a photographer and doula in Hawai'i when AUGHENBAUGH, WALZ, BOULTER, YOUNG, HOPAKI, CHIDESTER and GWIZD posted defamatory statements about Gallagher.

   **3.   Defendants' knowledge that Gallagher lives and works in Hawai'i by those who interacted with Hildreth's post on the DTD Community page on June 7, 2018 and after.**

77.   On June 7, 2018, Jacob Hildreth posted on the Community page of DTD, ""Aloha Danny. You don't know me but I know you. This is a problem. I know everything about you. from [sic] your battle with homelessness and obesity, to losing your wallet and home. And yes, the really disturbing stuff, using a trusted role to persuade pregnant women to do pornography. This is none of my business and I am indeed judging you. You need to make your profiles private, take that picture of the poor girl off your wall, and probably move off Maui. Not sure how life can remain the same for you from this point."

78.   Defendants, KIRILLOV and LAJOIE posted a thumbs up to Jacob Hildreth's statement acknowledging that Gallagher lived and worked in Maui, Hawai'i.

**B.   Defendants' Defamatory Statements**

16

79. After reviewing the DTD Home page, every defendant herein then visited the DTD Reviews page to post the above and below described defamatory statements about Gallagher and his businesses.

80. Defendants also then posted the same defamatory statements on and in Facebook groups that had thousands of members and links to other Facebook groups so that that tens of thousands of members did review the defamatory statements.

81. Before posting their defamatory statements, every defendant did review the string of posts and replies that extended from DOCKER's review indicating that plaintiff lived in Hawai'i because Facebook positioned DOCKER's review and post on the DTD Reviews page as the first review and post as the "most helpful."

82. Each and every one of the defendants' defamatory post was made after DOCKER's post that Gallagher lived in Hawai'i and each and every defendant read DOCKER's post that Gallagher lived in Hawai'i before making the defamatory post described herein.

   **1.   Defendants, CROUDACE and MATWISE**

83. On, or about, June 5, 2018, CROUDACE as an individual, and on behalf of the business entity MATWISE, prepared then disseminated to defendants, Elizbeth HOPAKI (**HOPAKI**), Madison BOULTER (**BOULTER**) and Elizabeth Geftakys (**Geftakys)** and others a "Memorandum of Official Statement" dated 05 June 2018. The Memorandum of Official Statement accused plaintiff, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3)

Fourth Amended Complaint and
Demand for Jury Trial

enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers. (**MATWISE's SET OF DEFAMATORY STATEMENTS**) (attached hereto as Exhibit "1".)

84. On or about June 5, 2018 and thereafter CROUDACE, expressly and/or impliedly directed others to republish MATWISE's SET OF DEFAMATORY STATEMENTS through social media and thereafter others did republish MATWISE's SET OF DEFAMATORY STATEMENTS through social media. CROUDACE knew that others, including HOPAKI, BOULTER, Geftakys, were republishing MATWISE's SET OF DEFAMATORY STATEMENTS and did nothing

Fourth Amended Complaint and
Demand for Jury Trial

to stop the republishing of MATWISE's SET OF DEFAMATORY STATEMENTS.

85.   On, or about, June 4, 2018, Jess Young posted the statement on Facebook, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[t]his man [meaning Gallagher] is a predator, luring women into nude photo shoots, refusing to return paid-for photographs from session over a year later, selling women's nakedness to other males. After he has groomed a group of females, he pits them against one another and quietly messages individual women he has targeted as financially or emotionally struggling, and tries coercing them into sexualized photos and videos for his profit. There are screenshot after screenshot of this behavior, with multiple women. The only women speaking up for him are the ones he has groomed fully and have not been contacted about sex work for him, yet. They are victims of his as much as anyone else involved. The fact that they are demanding evidence beyond what has already been given, shows what a masterful work this man has done to keep women from protecting one another in the birthing community. He is a predator - beware."

86.   On the same day, CROUDACE, thus also MATWISE in furtherance of MATWISE's business interest, posted a thumbs-up to the Young's statement.

87.   On the same day, in response to YOUNG's statement BOULTER posted, "[H]e [referring to Gallagher] shared their photos without permission" and then BOULTER posted the entire defamatory memorandum created and prepared by MATWISE and CROUDACE,

Fourth Amended Complaint and
Demand for Jury Trial

described below and attached as Exhibit "1", to which CROUDACE, posted a thumbs-up.

88. As such, CROUDACE and MATWISE approved and ratified the use of its memorandum by others and was n furtherance CROUDACE's and  MATWISE's business interest.

### a.    Innuendo, Inducement and Colloquium

89. CROUDACE and MATWISE, in other communications with HOPAKI, BOULTER and Geftakys and in MATWISE's SET OF DEFAMATORY STATEMENTS, did not attempt to prevent or otherwise limit use of, prevent the further publication of MATWISE's SET OF DEFAMATORY STATEMENTS or the content therein, through social media, but instead CROUDACE and MATWISE encouraged the unlimited world wide dissemination of MATWISE's SET OF DEFAMATORY STATEMENTS. CROUDACE and MATWISE have done absolutely nothing to prevent HOPAKI, BOULTER and Geftakys from referencing and republishing MATWISE's SET OF DEFAMATORY STATEMENTS through social media platforms, including for example Facebook, Twitter and Instagram, since CROUDACE and MATWISE became fully aware of HOPAKI's, BOULTER's and Geftakys' posting of MATWISE's SET OF DEFAMATORY STATEMENTS on or about June 3, 2018 and posted a thumbs up to each posting of the memorandum.

90. In the two pages that consist of the MATWISE's SET OF DEFAMATORY STATEMENTS, CROUDACE and MATWISE use the word "ɪntegrity" five times; use the word "ethics" three times; use the word "pornography" nine times, use the word "credible" and phrases "sexual predator" and "excuses in context" each once; and use the words in reference to Gallagher's character and conduct in his

20

personal and professional endeavors. The words are used in a negative manner and used to cast a false light about plaintiff's conduct and character, including in the manner that plaintiff conducts his professions.

91.   CROUDACE and MATWISE established credibility in MATWISE's SET OF DEFAMATORY STATEMENTS by indicating that "authorities" are conducting an ongoing investigation targeting Gallagher's conduct and market itself as an organization that has worldwide membership which is apparent from MATWISE's website. In fact, no regulatory body or law enforcement agency has undertaken any investigation.

92.   MATWISE's SET OF DEFAMATORY STATEMENTS was understood by the thousands of persons who did review MATWISE's SET OF DEFAMATORY STATEMENTS, to mean that Gallagher, *inter alia*, (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for

21

plaintiff's sexual gratification, financial gain and self-interest; (7) was
unethical in his practice as a doula in a manner that, and thereby,
violated the ethical and professional practices of doulas; (8) was
dishonest in his profession as photographer in a manner that, and
thereby, violated the ethical and professional practices of
photographers; (9) was deceptive in his profession as a photographer
for plaintiff's sexual gratification, financial gain and self-interest; and
(10) was unethical in his profession as a photographer in a manner
that, and thereby, violated the ethical and professional practices of
photographers.

93.   Prior to CROUDACE and MATWISE publishing MATWISE's SET OF
      DEFAMATORY STATEMENTS, CROUDACE and MATWISE
      knowingly did absolutely nothing to determine, or otherwise verify the
      truth of the defamatory statements and negative implications of
      MATWISE's SET OF DEFAMATORY STATEMENTS and the
      accusations they leveled against plaintiff.

94.   Prior to publishing MATWISE's SET OF DEFAMATORY
      STATEMENTS, CROUDACE and MATWISE knew that the
      accusations were false, however still published MATWISE's SET OF
      DEFAMATORY STATEMENTS and have since continued to publish
      MATWISE's SET OF DEFAMATORY STATEMENTS to other
      persons, on social media, and directly to MATWISE's subscribers and
      clients, family, friends, business acquaintances and persons
      CROUDACE and MATWISE do not have any prior knowledge, i.e.,
      indiscriminately publishing MATWISE's SET OF DEFAMATORY
      STATEMENTS to whomever will listen, may use the internet and has
      the ability to read MATWISE's SET OF DEFAMATORY

Fourth Amended Complaint and
Demand for Jury Trial

STATEMENTS, which was, and is, CROUDACE's and MATWISE's intention.

95. Moreover, CROUDACE and MATWISE have continued, through the present, to outwardly ratify, endorse, approve, consent, confirm and validate the accusations in MATWISE's SET OF DEFAMATORY STATEMENTS to other persons, that is to say, that Gallagher *inter alia*, (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his

Fourth Amended Complaint and
Demand for Jury Trial

profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers, including by publishing to its members, subscribers, affiliated persons and any person interested becoming associated with CROUDACE and MATWISE that MATWISE's SET OF DEFAMATORY STATEMENTS "will be available in PDF form on our website at the following URL: http://www.maternitywise.com/6-5-18StatmementMWI.pdf

96.  It was, is, and has always been, untrue, and false, that plaintiff, *inter alia*, (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his

24

Fourth Amended Complaint and<br>Demand for Jury Trial

profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

### 2. Defendant, Jane Hopaki (HOPAKI)

97. On, or about, June 3, 2018, Jane Hopaki (**HOPAKI**), sometimes using the social media identity "Jane Yaakni Hopaki", posted the statement on Facebook, thus published the statement on Facebook, to a Facebook group called Free Birth Society Group that had contact and links of tens of the thousands of other persons, and did so with the intent that many others would read the statement and republish the statement to others, "Birthy women, beware 'male doula' Danny Gallagher. He has been reported to his certifying body for his behavior in person an online with pregnant women. This man is a predator who has been on my radar and the radars of some very intelligent birthworker friends of mine for quite some time."

(**HOPAKI's FIRST SET OF DEFAMATORY STATEMENTS**)

98. On, or about, June 3, 2018, HOPAKI posted the following statements on Facebook in communications between other Facebook members, to a Facebook group called Free Birth Society Group that had contact and links of tens of the thousands of other persons, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "you are friends with this predator. [referring to plaintiff] … himself as a 'millionaire serial entrepreneur' and his target is vulnerable pregnant women. This is exploitation. … I set this [*sic*] posts to friends for that reason, but I guess because I tagged him his friends can see. …  the new accounts of abuse keep flooding in

25

behind closed doors. I believe someone is compiling a file to provide to those who may actually need it, not to the women naysayers who demand proof instead of trusting and listening to the victims. I've seen plenty of proof, and I trust my gut, but let me say this: I need no proof to believe women or put the dots together that a single childless man has no good reason to be passionate about childbirth." HOPAKI then posted MATWISE's SET OF DEFAMATORY STATEMENTS on Facebook, thus published posted MATWISE's SET OF DEFAMATORY STATEMENTS on Facebook, and did so with the intent that many others would read posted MATWISE's SET OF DEFAMATORY STATEMENTS and republish the statement therein to others. (**HOPAKI's SECOND SET OF DEFAMATORY STATEMENTS**)

### 3.   Defendant, Emilee Saldaya (SALDAYA)

99.   On, or about, June 9, 2018, Paula Brown Ricchi (**RICCHI**) defended Gallagher stating in a Facebook post that RICCHI has known "Danny for many years and have found him to be only honorable, kind, honest, encouraging and uplifting! I would work with Danny in a heart beat no matter what the circumstances!" and "[a]s I have stated, Danny has impeccable integrity: Definition: noun: the quality of being honest and having strong moral principles; moral uprightness."

100.  On or about one week after RICCHI made the positive statement on Facebook about Gallagher, SALDAYA posted the statement on Facebook, to a Facebook group called Free Birth Society Group that had contact and links of tens of the thousands of other persons, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Paula Brown Ricchi Are you supportive of a man being in the

birth industry, a lactation consultant, and also grooming pregnant and breastfeeding women to be on porn sites? I would certainly not want my "male doula" or my "male lactation consultant" to also be telling other moms how to lactate for money on porn sites. But to each their own I suppose" and "Paula Brown Ricchi I'm sorry I am a bit confused, does that mean you either haven't seen the proof in which he is caught in the act of doing this, or you have experienced him to be transparent about both infiltrating the birth world and grooming women for sex work? I'd be happy to share the screen shots the women have shared off of this review, as screenshots get taken down here. That's wonderful to meet a woman who knows him personally that he hasn't made feel extremely uncomfortable, glad to know there is one out there!" (**SALDAYA's FIRST SET OF DEFAMATORY STATEMENTS**)

101. On, or about, June 3,2018, SALDAYA posted the statement on Facebook, including to a Facebook group called Free Birth Society Group that had contact and links of tens of the thousands of other persons, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[h]ere's some wonderful evidence of Danny being a porn agent! I have received over 50 accounts of personal stories (some with screen shots some just personal narratives) of the many ways he has harassed, manipulated and victimized women." SALDAYA then posted communications between plaintiff and another person that SALDAYA asserted as "evidence" that plaintiff was a sexual predator. SALDAYA's "evidence" were screenshots of a communication between plaintiff and another person however the "evidence" was presented by SALDAYA in a disjointed manner,

Fourth Amended Complaint and
Demand for Jury Trial

lacking continuity, and without including the complete communication, thus in a way as to lead others to believe that plaintiff was a sexual predator. In no way could the communication be construed as predatory conduct if the truthful context was presented by SALDAYA. The true context of the communication between plaintiff and the other person was that the other person was asking and inquiring from plaintiff of means in which the other person might be able to derive income from certain media, because of plaintiff's knowledge, experience and training in media and promotion. SALDAYA then further posted, thus published, on Facebook in the same string, "[p]lease remember predators are often charming, smart, and nice. They know how to push just enough. This is one of many exchanges women had reluctantly with him. Many women do not want to share their story or details publicly. ...women aren't believing other women when they have the courage to call out a predator in our community? fucking shocker. The socialized misogyny runs so deep, it's painful." (**SALDAYA's SECOND SET OF DEFAMATORY STATEMENTS**)

102. On or about June 3, 2018, SALDAYA indicated to a Facebook group called Free Birth Society Group that had contact and links of tens of the thousands of other persons, "you can use my words from the original post", "the original post" accusing Gallagher, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that

violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers. In the same string, or conversation on Facebook, SALDAYA posted the statement on Facebook, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "this broker/pimp/predator is allowed to continue", referring to plaintiff. (**SALDAYA's THIRD SET OF DEFAMATORY STATEMENTS**)

103.  On or about June 3, 2018, SALDAYA indicated to a Facebook group called Free Birth Society Group that had contact and links of tens of the thousands of other persons that Gallagher "is a predator" and told those same tens of thousands of person who asked SALDAYA for the name of the person she believed was a predator that it was Gallagher who was the predator. (**SALDAYA's FOURTH SET OF**

**DEFAMATORY STATEMENTS**)

a.  **SALDAYA'S CONNECTION TO HAWAI'I AND KNOWLEDGE OF PLAINTIFF LIVING IN HAWAI'I**

104.  For many years, SALDAYA lived on Maui, Hawai'i and that Gallagher lived in Maui, Hawai'i and ran a doula and photography business.

105.  Along with Yolande Norris-Clark, SALDAYA is the owner and principal of a for-profit business called Free Birth Society (**FBS**) that has a presence on the World Wide Web.  For a fee, FBS provides training on childbirth without the assistance of medical professionals and also provides home birth "coaching packages", i.e., doula services.  FBS services are in direct competition with Gallagher's intended profession.

106.  FBS has a large presence in the doula community on Instagram where from at least December 12, 2017 through February 1, 2018, SALDAYA used FBS' Instagram account, or identity, to allow the general public to intimately follow her journey to Maui, Hawai'i for the birth of her child.  Every photo posted by FBS and SALDAYA was that of an apparently pregnant SALDAYA immersed in a location that would normally be associated and recognized as in the state of Hawai'i.

107.  Throughout FBS' and SALDAYA's multiple Instagram posts, the words used and photos attached carried the theme of Hawai'i and was pervasive and constant, including displaying Hawai'i's majestic natural beauty and splendor. Hawai'i was used as a prop to convince FBS and SALDAYA's followers, i.e., potential clients, that what FBS and SALDAYA were offering was different from others in the freebirth and doula community. FBS and SALDAYA apparently intended to communicate to others, including potential clients, was that FBS and

Fourth Amended Complaint and
Demand for Jury Trial

SALDAYA would also bring others a birth that is natural, majestic and beautiful. As such, FBS and SALDAYA used Hawai'i in the advertisement of its business.

108. From at least December 12, 2017 through February 1, 2018, FBS and SALDAYA posted Hawaiian themed advertisements on Instagram, each having multiple comments and hundreds of "likes".

109. On December 12, 2017, on the FBS Instagram account, FBS and SALDAYA posted a photo of SALDAYA in an airplane leaving for Maui, stating, "One way flights to Maui – a literal dream come true. …In our favorite place on the planet."

110. On December 16, 2017, on the FBS Instagram account, FBS and SALDAYA posted a video of a beach in Maui and posted "Mama Maui".

111. On December 16, 2017, on the FBS Instagram account, FBS and SALDAYA posted a photo of herself on a beach in Maui stating "Having arrived on the gorgeous island of Maui, we are actively call in our nest to call home for the birthing time."

112. On December 26, 2017, on the FBS Instagram account, FBS and SALDAYA posted another photo of SALDAYA, apparently pregnant, on a beach in Maui.

113. On December 28, 2017, on the FBS Instagram account, FBS and SALDAYA posted a photo of herself in front of Hawaiian themed wall art and recognizable palm trees in the background, stating, "…it's why I'm here, on this slow moving magical island – to watch the turtles sunbath (sic), to feel the sun set on my face, my feet in the sand, to fall asleep to the rain …."

114. On January 7, 2018, on the FBS Instagram account, FBS and SALDAYA posted a photo of herself in a Maui stating, "…Now I have

31

nothing to do but be here, in this sacred space, on this special island, opening up to a completely new existence inside myself."

115. On January 16, 2018, on the FBS Instagram account, FBS and SALDAYA posted another photo of SALDAYA, apparently pregnant, on a beach in Maui.

116. On January 27, 2018, on the FBS Instagram account, FBS and SALDAYA posted another photo of SALDAYA, apparently pregnant, with and open Hawaiian themed blouse displaying her belly and wearing a haku lei.

117. On February 1, 2018, on the FBS Instagram account, FBS and SALDAYA posted another photo of SALDAYA, apparently happy with her new born child, stating "…born freely at home in Maui, Hawai'i."

118. On February 19, 2018, on the FBS Instagram account, FBS and SALDAYA posted an advertising pamphlet advertising her doula services, stating "I am thrilled to announce my new project here in Maui, 'Mamatoto'. Two wonderful mama friends and I are launching Village Prenatals for Hapai women and Motherbaby postpartum circles – upcountry and on the north shore, beginning in March. If you know any mamas on Maui please help us spread the word. …More info on www.mamatotomaui.com."

119.  FBS and SALDAYA continued, and continue, to post Hawaiian themed photos and messages to advertise its doula services.

### **4.** **Defendant, Rachael Aughenbaugh (**AUGHENBAUGH**)**

120. On, or about, June 3, 2018, Chrystal Docker (**DOCKER**) defended Gallagher's integrity, transparency and high level of professionalism, including that MATWISE's accusations were false and not supported by any evidence, in a Facebook post.

Fourth Amended Complaint and
Demand for Jury Trial

121.  On or about two weeks after DOCKER made the positive statement posted on Facebook about Gallagher and in response to DOCKER making the positive statement about Gallagher, AUGHENBAUGH sometimes using the social media identity "Rachael Phoenix" posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[s]o sorry to hear he's grooming you too!" (**AUGHENBAUGH's FIRST SET OF DEFAMATORY STATEMENTS**)

122.  Prior to AUGHENBAUGH publishing AUGHENBAUGH's FIRST SET OF DEFAMATORY STATEMENTS, the term "groomed" was referenced in other Social Media discussions that AUGHENBAUGH participated in and reviewed, including discussions on Facebook referenced herein. "Groomed" was understood by AUGHENBAUGH to refer to Gallagher's victims who were the object of plaintiff's (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his

33

practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

123.  AUGHENBAUGH was aware that the persons AUGHENBAUGH published AUGHENBAUGH's FIRST SET OF DEFAMATORY STATEMENTS understood the meaning and implications of the term "groomed" in the manner that AUGHENBAUGH used the term, which was essentially that it was wrong for any person to discount or disbelieve the persons accusing Gallagher, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the

Fourth Amended Complaint and
Demand for Jury Trial

ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers, and that the accusations were in fact true.

124. On or about two weeks after WALZ, infra, posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Bizarre, narcissistic and Predatory", AUGHENBAUGH posted communications between plaintiff and another person that AUGHENBAUGH asserted as "proof" that plaintiff was a sexual predator. AUGHENBAUGH's "proof" were screenshots of a communication between plaintiff and another person however were presented by AUGHENBAUGH in a disjointed manner, lacking continuity, and without including the complete communication, thus in a way as to lead others to believe that plaintiff was a sexual predator. In no way could the communications be construed as predatory conduct if the truthful and full context of the circumstances and communications were presented by AUGHENBAUGH. The true

Fourth Amended Complaint and
Demand for Jury Trial

context of the communication between plaintiff and the other person was that the other person was asking and inquiring from plaintiff of means in which the other person might be able to derive income from certain commercial media platforms. Plaintiff directed advised the other person based on plaintiff's knowledge, experience and training in media and promotion. (AUGHENBAUGH**'s SECOND SET OF DEFAMATORY STATEMENTS**)

125. On or about June 3, 2018 Channa Jayde Walz (**WALZ**) posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Bizarre, narcissistic and Predatory …I am not ashamed of warning women of a predatory man. …The screenshots and his own interactions within birth spaces say otherwise [i.e., that plaintiff is not a sexual predator] …None of the other male doulas I've seen display predatory behavior or are messaging vulnerable women about selling their panties "tactfully" on the internet … Defend him all you want. My views based on what I have seen him post in groups and based off what other women have accounted and shown from him is enough for me to feel it pertinent other women know of this. Multiple women have come forward and I believe them along with what I've seen for myself.

 I'm basing my opinion off of interactions I quietly sat back and observed on various occassions [*sic*] in different places. His polls and post and interactions with women within birthing spaces was bizarre and narcissistic at minimum and definitely predatory. In all my years of being in birth communities never once have I heard of doula pm info on how to get in to sex work by selling panties etc to women in

Fourth Amended Complaint and
Demand for Jury Trial

financial crisis. A male doing this in predominately female spaces is predatory at best. The dismissal of various women's accounts against this one man is rather reminiscent of rape victims being silenced for speaking out against thier [*sic*] attackers. I know what I've seen and I most certainly believe the various accounts given and screen shotted by multiple women. Just because you've had a pleasant experience and do not find his behavior this way, does not mean others have not experienced otherwise or perceive his actions differently. … He has made himself known as a broker in the industry which enticed vulnerable women. Yes she reached out to him. Yes she had a conversation with him. You can then see how she gets a bit standoffish. He even asks if he has overwhelmed her. Ever been offered something that you later regret taking? Ever accepted a date, go to his home and then decide things maybe went too fast and you have second thoughts? Many women have the "nice girl" complex and don't know how to shut a man down once they no longer feel comfortable. Sex work is not the issue. The issue is that a MAN has targeted vulnerable women within birthing spaces. He is not just giving them advice and sending them on their way. He is having them send him their content and "building their platform" for them. He has also directed multiple women to ONE domain instead of giving resources for multiple places to do this. He is objectifying women in these spaces. … And again, this is not an isolated incident to just one or two women. … The other screen shots etc are not mine to share. When those women feel the time is right They will put them out there. Not me."

126. Immediately after and within the string of posts set forth immediately above, AUGHENBAUGH posted the statement on Facebook, thus

Fourth Amended Complaint and
Demand for Jury Trial

published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Exactly what Channa said," thus adding attempted add validity and veracity to WALZ's defamatory statement. (AUGHENBAUGH**'s THIRD SET OF DEFAMATORY STATEMENTS**)

### 5.    Defendant, Jenna Chidester (CHIDESTER)

127.   On, or about, June 3, 2018, Chrystal Docker (**DOCKER**) defended Gallagher's integrity, transparency and high level of professionalism, including that MATWISE's accusations were false and not supported by any evidence, in a Facebook post.

128.   On, or about, two weeks after DOCKER made the positive statement on Facebook about Gallagher and in response to DOCKER made the positive statement of Gallagher, CHIDESTER replied by, thus publishing, the statement on Facebook, including on and in DTD, "Ok even if you don't believe the handful of women who have come forward about him making them feel fetishized, about him taking partially nude maternity pics but never actually providing the edited photos etc, I disagree with that approach but I guess you can play devil's advocate if you want. But the video he posted to Doula Talk where he violated HIPAA over and over again, and then revealed details of a domestic violence situation about his 'first birth client' right after he posted photos of that client- that we all saw and watched with our own eyes in real time- this isn't a conspiracy and you're neutrality here is siding with the oppressor." (**CHIDESTER's FIRST SET OF DEFAMATORY STATEMENTS**)

129.   On, or about, June 6, 2018, CHIDESTER posted on the Facebook, including on and in DTD, that "Danny has revealed HIPAA protected

Fourth Amended Complaint and
Demand for Jury Trial

information and enough detail about domestic violence situations that his client was identifiable in self promotional YouTube and Facebook live videos, and then blocked birth workers who pointed out the ethic violations. This would disqualify him from certification w all reputable professional doula organizations. Just be careful, he has signaled many times over that he doesn't care if that puts his client in danger." (**CHIDESTER's SECOND SET OF DEFAMATORY STATEMENTS**)

130. In stating that those who disbelieved the accusations against Gallagher were "playing devil's advocate" in CHIDESTER's FIRST SET OF DEFAMATORY STATEMENTS, CHIDESTER represented that the accusations leveled against Gallagher were true.

131. In CHIDESTER's FIRST SET OF DEFAMATORY STATEMENTS and CHIDESTER's SECOND SET OF DEFAMATORY STATEMENTS CHIDESTER stated that Gallagher violated the Health Insurance Portability and Accountability Act of 1996 (**HIPPA**) although Gallagher was not a covered entity under the Act and even if Gallagher was a covered entity, he never made any violation of any person's privacy. CHIDESTER knew that Gallagher was not subject to compliance with HIPPA however wanted the thousands of persons CHIDESTER knew would review CHIDESTER's statements that Gallagher was violating a law and that he was unethical, dishonest and practiced being a doula in a manner that fell below that expected of other doulas in the same circumstances.

### 6. Defendant, Stephanie Byers (BYERS)

132. On, or about, June 5, 2018, BYERS, sometimes using the social media identity "Stephanie Byers", posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement

and republish the statement to others, "[e]very interaction I have witnessed from Danny on social media has been passive-aggressive, gaslighting, and an attempt to gain sympathies from those struggling with internalized misogyny. There are so many women who are left feeling violated by his actions, but nobody is bothering to validate the subtle abuse happening to them, only kowtowing to this presumptuous act Danny puts on. Red flags are all over this guy." (**BYERS' FIRST SET OF DEFAMATORY STATEMENTS**)

133. BYERS was aware that the persons who read BYERS' FIRST SET OF DEFAMATORY STATEMENTS understood the meaning and implications of the phrase "women who are left feeling violated by his actions" and "subtle abuse happening to them" in the manner that BYERS used the phrase, which was essentially that it was wrong for any person to discount or disbelieve the persons accusing Gallagher, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for

40

plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers, and that the accusations were in fact true.

134. On, or about, June 3, 2018, BYERS posted the statement on Facebook, including Facebook groups that have thousands of members and links, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Danny Gallagher is a predator. Women have been his prey for a specific audience he gets compromising photos for, and he is NOT a doula of any kind. Be warned and steer clear. Political correctness has blinded so many into acceptance of predators into supposed safe spaces. Don't worry, I have never accepted his requests to join any of my groups, and he is being exposed as we speak. If you are a moderator or admin for a birth group, I compel you to give him the boot immediately. He is a PIMP. Not a doula. … Its being worked on now by at least one of his victims speaking up. A file is being made…. Just the fact that he requests these photo shoots is one huge red flag. I dont know of any FEMALE doulas who do that … Ive [*sic*] seen milk bath photo shoots before and a couple other naked ones, come to think of it... However those have been more woman-led images of powerful (although not

41

my taste) art, and not woman-exposing images of exploitation. If you could see them side by side to compare, I think most people would note the stark contrast. …he gives off a VERY creepy vibe. Screen shots of his actual conversations requesting naked photos of women... I'd call that proof  … I wont violate those women's privacy to prove this guy is a predator. Its really quite shocking it has taken this long for some women to cotton on. … I have not been given the green light to share the evidence yet, but it is being compiled and a case is being made right now, by at least one of his victims who is speaking out. Women are being preyed upon by this guy, so yes, I am sending out a caution for those who will benefit from such a warning. … It makes me CRINGE to think of his predator eyes being in that supposed safe space" (BYERS**' SECOND SET OF DEFAMATORY STATEMENTS**)

### 7.    Defendant, Bethany Kirillov (KIRILLOV)

135.  On, or about, June 4, 2018, KIRILLOV responded to WHRITENOUR'S SET OF DEFAMATORY STATEMENTS and posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[t]here is much screenshotted evidence that this guy is luring vulnerable women into doing sexual videos and photography. He has used birth photos without permission and refuses to take them down. I have heard account after account that this guy is targeting pregnant and financially vulnerable victims. The truth has come out and he was never a birth worker in the first place. Do not let this man into your birthing space. He uses the word "doula" to gain women's trust. A doula literally means "woman servant". This person is not a servant of

Fourth Amended Complaint and
Demand for Jury Trial

women. He is very cunning in the way he lures and traps his victims. They feel he is charming and very helpful up front when in reality it's a way for him to profit off his sickness. He has a strange sexual fetish for women giving birth. He makes many ladies very uncomfortable and a few were brave enough to come forward with their evidence. He toots his horn in a way to show how "progressive" he is as a "male" doula. "I am special because I am a man interested in birth. Let me grace you with my presence.."    many are afraid to call him out for what he is because they like the idea of accepting a male doula and they do not want to discriminate because he is a man. I however, have no issue calling it what it is. Preying on women. Selling their birth pictures. Using their bodies as a financial gain without permission. No sir. Birth still belongs to women and you're not invited! Down with the patriarchy!" (**KIRILLOV's SET OF DEFAMATORY STATEMENTS**)

136. Since KIRILLOV's SET OF DEFAMATORY STATEMENTS was made on the Facebook, including on and in DTD in the "Reviews Page", and that WHRIITENOUR referred to "Danny", KIRILLOV's SET OF DEFAMATORY STATEMENTS was of an concerning Gallagher and the thousands of person who viewed KIRILLOV's SET OF DEFAMATORY STATEMENTS understood the KIRILLOV's SET OF DEFAMATORY STATEMENTS as of and concerning Gallagher.

   **8.    Defendant, Samantha Lajoie (LAJOIE)**

137. On, or about, June 3, 2018 LAJOIE, posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "I had open conversations with multiple women who have came forward they [*sic*]

Fourth Amended Complaint and
Demand for Jury Trial

don't feel he is safe and should be a doula bc he has ulterior motives. He has been in the wrong many many times and women who personally know him have come forward. Many of us were asked not to share too much of the compiling info that is being gathered which will come forward in the near future." (**LAJOIE's FIRST SET OF DEFAMATORY STATEMENTS**)

138. On, or about, June 9, 2018 LAJOIE, posted the statement on Facebook, thus published the statement on Facebook, including on and in DTD, and did so with the intent that many others would read the statement and republish the statement to others, "[so] it definitely appears my profile was permanently disabled bc I spoke up against a predator on FB and shared proof of such. Some of his followers flagged my review as spam/abusive so apparently on FB now women cannot speak up against such or we may be banned from fb. This is ridiculous I should not have lost my account for speaking up and telling other women and nothing I wrote was out of line just that he was a predator and a liar, screen shots of proof and standing up for all the women who came forward. How is that acceptable for fb to silent me and other's who did such bc I'm not the only one who got my account disabled and reported, but many who did speak up and still are have not had anything done to them but I believe those who shared proof were removed. So I guess fb protects predators and silences those speaking out. This is wrong and I will fight for my profile back because they are in the wrong for protecting that man. I have seen child pornography posted from people who don't loose their pages or groups, sex predators, racism, prejudice, real abusive post and comments and nothing done about it or taken serious but they try and silence me! If anyone on my friends list wants to

Fourth Amended Complaint and
Demand for Jury Trial

message fb support standing up for me that would be great. I know one other person already has and I won't stop reaching out until someone listens to me. My profile never should have been disabled for such! I'll continue fighting back." (**LAJOIE's SECOND SET OF DEFAMATORY STATEMENTS**)

### 9.    Defendant, Aerin Lund (LUND)

139.   On, or about, June 4, 2018 LUND, sometimes using the social media identity, "Aerin Wolf Lund", posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "now you have been exposed as the predator you are and made yourself an example of WHY MEN DO NOT BELONG IN BIRTH" (**LUND's SET OF DEFAMATORY STATEMENTS**)

### 10.    Defendant, Kate Pavlovsky (PAVLOVSKY)

140.   PAVLOVSKY is a competing doula and photographer, that is to say, PAVLOVSKY is directly competing with Gallagher and is in the same profession and industry as Gallagher.

141.   On, or about, June 3, 2018, PAVLOVSKY posted the statement on Facebook, including on and in DTD and Facebook groups that have thousands of members and links, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, referencing Gallagher throughout the post by referencing PAVLOVSKY's earlier post that identified Gallagher,

"For those of you who saw my earlier post, I 100% stand by what I said. However, I am not the only victim of this predator and I do not feel like being singled out. I do not wish for the burden of proof to fall only on me.

Fourth Amended Complaint and
Demand for Jury Trial

This person is dangerous and detrimental to the birth realm. Please beware.

Also, victim blaming is not ok. Distrusting victims is not ok. This is creating a rift among birthworkers while this predator walks free to cause harm. It's sickening to say the least.

Thank you to everyone who reached out in support. I love you all very much; you are special people.

Please watch out for a predator infiltrating natural birth groups on social media. This is his MO:

1. He gets permission from the group moderator. Then he posts an intro full of heart-rending tales of disadvantage and trauma. This incites sympathy from women conditioned to be caring.

2. Having gained access to the group, he then makes ego-centric and grandiose posts. This hooks into the way that women are socialized to praise, adulate and stroke the egos of men, and to show humility in the face of male bragging.

3. Around this time, any women in the group with finely tuned radars for narcissism, bullshit or perve are likely to call him on a breach of confidentiality or some other crossing of basic boundaries. At this point, he arcs up defensively way out of proportion to the issue. Then some women in the group are likely to rush to his defence and make allowances for him. The ones with misgivings then start to doubt themselves and back down a little so as not to cause upset within the group.

4. He is a master at using women's strengths against them. He gives the impression that he is doing everything with the Moderator's permission. He infers that he has special favour and a special connection with the group leader, or any woman of prominence and influence. He piggy-backs on the trust and credibility that lead woman has with the group by invoking her.

Fourth Amended Complaint and
Demand for Jury Trial

Members then feel constrained to complain about him or report him, because of their love and loyalty for their LEADER – and they don't want to seem to be questioning her judgement or second-guessing what is apparently her call (according to his claims). In this way, he subverts the loyalty of women and uses it against them. In one case, he claimed a leading midwife in his community was his "mentor". She wasn't. In our group, he claimed that he was in business with our leader and that she was collaborating with him. She wasn't.

5. Then he posts polls about whether he should stay in the group or leave. This appeals to women's eagerness to express an opinion and to cast a vote. In our culture women are often not consulted, don't have access to forums and are thus under-represented, so this opportunity is highly attractive.

6. He then incites division in the group. He plays the misunderstood, misjudged victim and those whose alarm bells are loudly clanging are not only depicted by him as mean, judgemental, non-inclusive and sexist – but other women, desperate to not be written off by A Man as being a "nasty woman" quickly round on the dissenters and tip staggering dump-truck loads of internalized misogyny all over them. But this is merely a diversion. While he continues to stoke the drama and strife, he's actually quietly going about his real work.

7. Which is to trawl the group for women who are insecure or unstable in terms of their financial security, self-esteem or in need of sexual validation. He wins their trust, makes alluring promises and grooms them to provide naked photos of themselves, or their underwear, to sell to a select audience of men. Guess who is the broker. He is a predatory pimp, no less, and he is *not* a doula.

8. Fall-out from the above subversions are diverse. Some women may feel

47

ashamed that they trusted him, (or that they pretended to trust him for a while in order to figure out if he was legit or not). Vulnerable women talk about how nice and kind he was to them, not aware that he is grooming them. Other women turn on those who express a negative or distrustful opinion of him, to the point of screen-shotting their posts and sending them to him, seemingly unaware that he has manipulated them into acting as his handmaids. He acts gracious in the face of criticism publically, while privately attacking those who confront him venomously.

The point of this post is not only to warn about this individual and others like him. It's so that we can question, and examine, how we as women – from the naïve ingénues to the jaded, skeptical crones, can be so easily manipulated, exploited and turned on each other. …

Even if you don't think he is in the wrong to approach women about getting them into sex work.... do you want men out there who would say or do these things to lure your daughter into taking nude photos or selling her panties?! It's outrageous. The thing is we all do have proof. It is not yet compiled altogether but it won't be long til it is and everyone can see his patterns. It makes me sick knowing there are WOMEN defending him. He does not belong in the birth world. This work is not safe if he is able to infiltrate our groups this way. He is a master manipulator which is why we all have to be together in defending ourselves against him. …"

(**PAVLOVSKY's FIRST SET OF DEFAMATORY STATEMENTS**)

142.  On, or about, June 3, 2018, Hayley Huber made the statement on Facebook abut plaintiff, "[t]he comments on his business page from women defending him are pretty scary. These doulas are claiming that they "know" him because they have spent hours chatting with him, talking on the phone, and talking to him on fb groups - but they've never actually met him. I want to comment so badly and ask

48

them what they'd think if their daughter came to them and told them about an amazing guy they met online, and how well they knew him because they'd spent hours chatting him up online... the internet is so scary. You could download a dating app today and set up 10 dates, I guarantee at least 3 of them wouldn't live up to their online persona - and that's not even the scary side of what you can get away with online these days. How these women and specifically doulas who are trained to protect a woman's space are defending him without ever having met him in person is baffling to me."

143. On, or about, June 3, 2018, in response to the statement made by Hayley Huber, PAVLOVSKY posted the statement on Facebook, including on and in DTD and Facebook groups that have thousands of members and links, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "I love everything about this comment here because I have gone through all of these same thoughts. Especially the thought of .. what if these women were your daughters? Even if you don't think he is in the wrong to approach women about getting them into sex work.... do you want men out there who would say or do these things to lure your daughter into taking nude photos or selling her panties?! It's outrageous. The thing is we all do have proof. It is not yet compiled altogether but it won't be long til it is and everyone can see his patterns. It makes me sick knowing there are WOMEN defending him. He does not belong in the birth world. This work is not safe if he is able to infiltrate our groups this way. He is a master manipulator which is why we all have to be together in defending ourselves against him." (**PAVLOVSKY's SECOND SET OF DEFAMATORY STATEMENTS**)

Fourth Amended Complaint and
Demand for Jury Trial

### 11.   Defendant, Channa Jayde Walz (WALZ)

144.  On or about two to five weeks after June 3, 2018 when Jenni Gall
(**GALL**) posted a comment on Facebook relating to plaintiff, WALZ
posted the statement on Facebook, including on and in DTD, thus
published the statement on Facebook, and did so with the intent that
many others would read the statement and republish the statement to
others, "this doula has displayed behaviors that have elicited concern
from many women due to his own interactions in various spaces.
…Not all interactions were made in just one post or to one woman.
And I am pretty sure I know of the woman you refer to and it is not
just her who had messages refering [*sic*] to porn sites etc Just
because one woman initiated the contact doesn't mean others did
not. …Even if some of these women did initiate messages to him or
whatever and found him respectful, do you not find it predatory to be
in birth groups directing vulnerable pregnant women to sex work as a
man? And to one particular site.... Have you EVER heard of a woman
doula doing this to multiple women? Honestly. Does that not make
other women feel objectified by him knowing he does those things
with other women he met in birthing communities?" (**WALZ's FIRST
SET OF DEFAMATORY STATEMENTS**)

145.  On or about June 3, 2018 WALZ posted the statement on Facebook,
including on and in DTD, thus published the statement on Facebook,
and did so with the intent that many others would read the statement
and republish the statement to others, "BIZARRE, narcissistic and
Predatory …I am not ashamed of warning women of a predatory
man. …The screenshots and his own interactions within birth spaces
say otherwise [i.e., that plaintiff is not a sexual predator] …None of
the other male doulas I've seen display predatory behavior or are

messaging vulnerable women about selling their panties "tactfully" on the internet … Defend him all you want. My views based on what I have seen him post in groups and based off what other women have accounted and shown from him is enough for me to feel it pertinent other women know of this. Multiple women have come forward and I believe them along with what I've seen for myself.

 I'm basing my opinion off of interactions I quietly sat back and observed on various occassions [*sic*] in different places. His polls and post and interactions with women within birthing spaces was bizarre and narcissistic at minimum and definitely predatory. In all my years of being in birth communities never once have I heard of doula pm info on how to get in to sex work by selling panties etc to women in financial crisis. A male doing this in predominately female spaces is predatory at best. The dismissal of various women's accounts against this one man is rather reminiscent of rape victims being silenced for speaking out against thier [*sic*] attackers. I know what I've seen and I most certainly believe the various accounts given and screen shotted by multiple women. Just because you've had a pleasant experience and do not find his behavior this way, does not mean others have not experienced otherwise or perceive his actions differently. … He has made himself known as a broker in the industry which enticed vulnerable women. Yes she reached out to him. Yes she had a conversation with him. You can then see how she gets a bit standoffish. He even asks if he has overwhelmed her. Ever been offered something that you later regret taking? Ever accepted a date, go to his home and then decide things maybe went too fast and you have second thoughts? Many women have the "nice girl" complex and don't know how to shut a man down once they no longer feel

comfortable. Sex work is not the issue. The issue is that a MAN has targeted vulnerable women within birthing spaces. He is not just giving them advice and sending them on their way. He is having them send him their content and "building their platform" for them. He has also directed multiple women to ONE domain instead of giving resources for multiple places to do this. He is objectifying women in these spaces. … And again, this is not an isolated incident to just one or two women. … The other screen shots etc are not mine to share. When those women feel the time is right They will put them out there. Not me." (**WALZ's SECOND SET OF DEFAMATORY STATEMENTS**)

### 12. Defendant, Madison Sisley Boulter (BOULTER)

146.  On, or about, two weeks after the posting of YOUNG's FOURTH SET OF DEFAMATORY STATEMENTS (infra), BOULTER, sometimes using the social media identity "Maddie Boulter", posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, that Gallagher "shared their photos without permission" and then published MATWISE's SET OF DEFAMATORY STATEMENTS on Facebook and by doing so adopted, ratified, affirmed and outwardly confirmed as true, the false statements in the MATWISE's SET OF DEFAMATORY STATEMENTS. (**BOULTER's FIRST SET OF DEFAMATORY STATEMENTS**)

147.  In the "Home" section of DTD Facebook page, after Gallagher made a positively toned post about his business on May 28, 2018, BOULTER made an unsolicited and unrelated defamatory statement by posting and thereby publishing the MatternityWise International

52

(**MATWISE**) "Memorandum of Official Statement" dated 05 June 2018, attached hereto as Exhibit "1". (**BOULTER's SECOND SET OF DEFAMATORY STATEMENTS**)

### 13. Defendant, Esme Whritenour (WHRITENOUR)

148. On, or about, June 4, 2018, WHRITENOUR posted the statement on Facebook, thus published the statement on Facebook, including on and in DTD, and did so with the intent that many others would read the statement and republish the statement to others, "[t]he birth world is full of men who believe they're entitled to do what they want with women's bodies, in the name of "helping them". Danny takes this to the next level by lying about his "tragic past" in order to gain women's trust so he can groom them and later exploit them for his profit/sexual pleasure . For as many women as have had mundane encounters with him, there are 10 more that have been repeatedly violated and harassed by him. It truly disgusts me to see someone fetishizing and exploiting women in their childbearing year as blatantly as he has." (**WHRITENOUR's SET OF DEFAMATORY STATEMENTS**)

149. Since the WHRITENOUR's SET OF DEFAMATORY STATEMENTS was made in DTD in the "Reviews Page", and that WHRIITENOUR referred to "Danny", WHRITENOUR's SET OF DEFAMATORY STATEMENTS was of an concerning Gallagher and the thousands of persons who viewed  WHRITENOUR's SET OF DEFAMATORY STATEMENTS understood WHRITENOUR's SET OF DEFAMATORY STATEMENTS as of and concerning Gallagher.

### 14. Defendant, Adrianna Brooks (BROOKS)

150. On, or about, June 4, 2018, Adrianna Brooks (**BROOKS**), using the identity "Aydree Ahnah", posted the statement on Facebook, in DTD and Facebook groups that have thousands of members and links,

Fourth Amended Complaint and
Demand for Jury Trial

thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[d]on't be scammed! This man is not who he says he is. He preys on vulnerable pregnant women, and lies to try and cover his tracks. He recently used a photo of a mom giving birth for his own profit and REFUSED to take down the photo when she asked. He wasn't even at her birth! Don't be his next victim!!!"
(**BROOKS' SET OF DEFAMATORY STATEMENTS**)

### 15. Defendant, Nicolette Raymond (RAYMOND)

151. On, or about, June 4, 2018, RAYMOND posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[n]ot only does this guy have a sick fetish for pregnant women, an maternity/breastfeeding  photography, [*sic*] he also shares photos of his clients that she has not gotten permission for with random women, and most likely others (men, porn sites etc)! He has been known to post women's personal birth pictures on his business page without any sort of permission and ignores and blocks whoever tries to get the image down. He doesn't care about women, [*sic*] he only cares about himself and making money by any means necessary, even if that means making up stories to get himself ahead. Do not trust him." (**RAYMOND's FRIST SET OF DEFAMATORY STATEMENTS**)

152. On, or about, June 4, 2018, RAYMOND posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Oh fuck anyone

who thinks this guy is not a complete predator is part of the problem."
(**RAYMOND's  SECOND SET OF DEFAMATORY STATEMENTS**)

### 16. Defendant, Jess Young (YOUNG)

153. On, or about, June 3, 2018, Chrystal Docker (**DOCKER**) defended Gallagher's integrity, transparency and high level of professionalism, including that MATWISE's accusations were false and not supported by any evidence, in a Facebook post.

154. On or about, two weeks after DOCKER made the positive statement on Facebook about Gallagher and in response to DOCKER made the positive statement of Gallagher, YOUNG posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[m]ost of the women coming out against him HAVE dealt with him, have screenshots, and people scream 'liar' at them because they love coddling male feelz. Victim dismissal is nothing new." (**YOUNG's FIRST SET OF DEFAMATORY STATEMENTS**)

155. On, or about, June 4, 2018, after WHRITENOUR published WHRITENOUR's SET OF DEFAMATORY STATEMENTS, YOUNG posted the reply on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "I knew GraceLynn Willard or Danny would remove her female-hating comments, as happened with a male who came on to defend Danny, calling women who want to protect other women 'FemiNazis.' GraceLynn Willard, wishing rape and death on other women who you hate - your hate and vile is the very kind of thing others are willing to see the truth of in Danny's screen shots of private

Fourth Amended Complaint and
Demand for Jury Trial

conversations - he just has enough self-control to sugar-coat it and make it look like care and compassion for struggling women. You just come right out and wish rape and assault on other women. When the website goes up to share all of these complete conversations, your name will not be erased from the screen shots. You are a betrayer of women. We will still be here for you if you ever are willing to see the truth from countless women rather than boot-lick this man who lies and deceives the women of birthing communities." (**YOUNG's SECOND SET OF DEFAMATORY STATEMENTS**)

156. On, or about, June 3, 2018, GraceLynn Willard (**WILLARD**) defended Gallagher's integrity in a Facebook post and encouraged others to have Gallagher coach them through childbirth.

157. On or about two weeks after WILLARD's defense YOUNG posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Danny's story/background of a dead wife/girl friend in a plane crash/suicide/death at birth/car accident has connected MANY women to him!! Screenshots from many many women of these shifting and changing stories - you can choose to pay heed or ignore them and be his flying monkey. You have been groomed like so many others and there is NO motive in these women to "destroy a man" only to SAVE WOMEN. I don't give a crap about destroying anyone, only speaking truth to save others.

His stories of hardship and struggle are a ruse to lure women into trusting him and defending him. Narcissists tactics literally never change - you have become his flying monkey, and that is also a tale as old as time. Like Jenna commented in another review: " Ok even if

56

you don't believe the handful of women who have come forward about him making them feel fetishized, about him taking partially nude maternity pics but never actually providing the edited photos etc, I disagree with that approach but I guess you can play devil's advocate if you want. But the video he posted to Doula Talk where he violated HIPAA over and over again, and then revealed details of a domestic violence situation about his "first birth client" right after he posted photos of that client- that we all saw and watched with our own eyes in real time- this isn't a conspiracy and you're neutrality here is siding with the oppressor." (**YOUNG's THIRD SET OF DEFAMATORY STATEMENTS**)

158. On, or about, June 4, 2018, YOUNG posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[t]his man [meaning Gallagher] is a predator, luring women into nude photo shoots, refusing to return paid-for photographs from session over a year later, selling women's nakedness to other males. After he has groomed a group of females, he pits them against one another and quietly messages individual women he has targeted as financially or emotionally struggling, and tries coercing them into sexualized photos and videos for his profit. There are screenshot after screenshot of this behavior, with multiple women. The only women speaking up for him are the ones he has groomed fully and have not been contacted about sex work for him, yet. They are victims of his as much as anyone else involved. The fact that they are demanding evidence beyond what has already been given, shows what a masterful work this man has done to keep women from protecting one another in the

Fourth Amended Complaint and
Demand for Jury Trial

birthing community. He is a predator - beware." (**YOUNG's FOURTH SET OF DEFAMATORY STATEMENTS**)

159. On or about June 4, 2018, YOUNG posted the statement on and in a Facebook group of thousands of members, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "Danny the creepy doula (who has in other places,  said he should start selling pictures I've women's bodies/bottoms in sexual poses because he can't get more money and' maybe I am in the wrong line a business' – basically, become their pimp) is the talk of several other birth groups, and not in a warm, fuzzy way. You're not alone! … he is a predator and I want to make as many females are aware of him as possible. … make a public album of these, to start spreading around. Maybe these can be shared with a RedFem page that exposes male violence and predatory behavior" (**YOUNG's FIFTH SET OF DEFAMATORY STATEMENTS**)

### 17. Defendant, Marie-Soleil Deschamps (DESCHAMPS)

160. On, or about, June 4, 2018, DESCHAMPS posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "WARNING: Danny Gallagher is a predator who has infiltrated the birth world and needs to be removed immediately. He has been removed from the big groups and the admins of Doula Talk are reporting him to his certifying board. He has been caught victimizing women and his scheme has been exposed. He trawls birth groups for women who are insecure or unstable in terms of their financial security, self esteem or in need of sexual validation. He contacts them privately,

wins their trust, makes enticing promises, and grooms them to provide naked photos of themselves to sell to a select audience of men. He's the broker. He is a predatory pimp, he is not a doula. He has harassed a number of women online to sell them their used panties. This has all been confirmed.  This is very serious, he is a sexual predator and is dangerous. Please help me in shutting this shit down. *this is why men are not allowed in this fucking group.*"

(**DESCHAMPS' SET OF DEFAMATORY STATEMENTS**)

## 18.   Defendant, Julie Bell (BELL)

161.  On, or about, June 3, 2018, Julie Bell (**BELL**), sometimes using the social media identity "Melbourne Doula Birth Support", posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others,"[p]lease watch out for a predator infiltrating natural birth groups on social media. This is his MO:

1. He gets permission from the group moderator. Then he posts an intro full of heart-rending tales of disadvantage and trauma. This incites sympathy from women conditioned to be caring.

2. Having gained access to the group, he then makes ego-centric and grandiose posts. This hooks into the way that women are socialized to praise, adulate and stroke the egos of men, and to show humility in the face of male bragging.

3. Around this time, any women in the group with finely tuned radars for narcissism, bullshit or perve are likely to call him on a breach of confidentiality or some other crossing of basic boundaries. At this point, he arcs up defensively way out of proportion to the issue. Then some women in the group are likely to rush to his defence and make allowances for him.

Fourth Amended Complaint and
Demand for Jury Trial

The ones with misgivings then start to doubt themselves and back down a little so as not to cause upset within the group.

4. He is a master at using women's strengths against them. He gives the impression that he is doing everything with the Moderator's permission. He infers that he has special favour and a special connection with the group leader, or any woman of prominence and influence. He piggy-backs on the trust and credibility that lead woman has with the group by invoking her. Members then feel constrained to complain about him or report him, because of their love and loyalty for their LEADER – and they don't want to seem to be questioning her judgement or second-guessing what is apparently her call (according to his claims). In this way, he subverts the loyalty of women and uses it against them. In one case, he claimed a leading midwife in his community was his "mentor". She wasn't. In our group, he claimed that he was in business with our leader and that she was collaborating with him. She wasn't.

5. Then he posts polls about whether he should stay in the group or leave. This appeals to women's eagerness to express an opinion and to cast a vote. In our culture women are often not consulted, don't have access to forums and are thus under-represented, so this opportunity is highly attractive.

6. He then incites division in the group. He plays the misunderstood, misjudged victim and those whose alarm bells are loudly clanging are not only depicted by him as mean, judgemental, non-inclusive and sexist – but other women, desperate to not be written off by A Man as being a "nasty woman" quickly round on the dissenters and tip staggering dump-truck loads of internalized misogyny all over them. But this is merely a diversion. While he continues to stoke the drama and strife, he's actually quietly going about his real work.

Fourth Amended Complaint and
Demand for Jury Trial

7. Which is to trawl the group for women who are insecure or unstable in terms of their financial security, self-esteem or in need of sexual validation. He wins their trust, makes alluring promises and grooms them to provide naked photos of themselves, or their underwear, to sell to a select audience of men. Guess who is the broker. He is a predatory pimp, no less, and he is *not* a doula.

8. Fall-out from the above subversions are diverse. Some women may feel ashamed that they trusted him, (or that they pretended to trust him for a while in order to figure out if he was legit or not). Vulnerable women talk about how nice and kind he was to them, not aware that he is grooming them. Other women turn on those who express a negative or distrustful opinion of him, to the point of screen-shotting their posts and sending them to him, seemingly unaware that he has manipulated them into acting as his handmaids. He acts gracious in the face of criticism publically, while privately attacking those who confront him venomously.

The point of this post is not only to warn about this individual and others like him. It's so that we can question, and examine, how we as women – from the naïve ingénues to the jaded, skeptical crones, can be so easily manipulated, exploited and turned on each other." (**BELL's FIRST SET OF DEFAMATORY STATEMENTS**)

162.   On, or about, June 4, 2018, BELL posted the statement on Facebook, including on and in DTD and Facebook groups that have thousands of members and links, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "DG [referring to plaintiff] is a predator. He infiltrates groups, including a business mentoring group I am in. He prays on the trusting nature I've women and on our anxiety to not be accused of being sexist or not inclusive. He arcs up

61

defensively at any one who picks up his narcissism on their radar and tries to shut them down and discredit them. … he then sifts the group for vulnerable women that he can manipulate and groom.  He carefully grins his hand-picked victims, then entices them to sell naked photos of themselves to a select audience of men. Guess who the broker is. He is a trafficker. He makes women who picked up that creepy vibes feel guilty so they keep quiet while he prays on the vulnerable. He is a ConMan." (**BELL's SECOND SET OF DEFAMATORY STATEMENTS**)

### 19.   Defendant, Cara Gwizd (GWIZD)

163.  On, or about, June 18, 2018, Cara Gwizd (**GWIZD**), sometimes using the social media identity "Cara Gwizd", posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "If this individual [referring to plaintiff] had wanted to start a business of selling sex fetish items or of a pornographic nature then please do not use birth groups as a place to promote such business ventures- use other spaces." (**GWIZD's SET OF DEFAMATORY STATEMENTS**)

### 20.   Defendant, Holly Leppard-Westhaver (LEPPARD-WESTHAVER)

164.  On, or about, June 5, 2018 LEPPARD-WESTHAVER, sometimes using the social media identity "Hollie Michelle", posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[t]his man is NOT a doula.. He is a womanizing predator who prays on vulnerable women; sharing their intimate photos without permission, funnelling

[sic] them into sex work, and uses lies and manipulation to create a persona within the birth world to attract victims..." (**LEPPARD-WESTHAVER's SET OF DEFAMATORY STATEMENTS**)

### 21. Defendant, Eloise Victoria (VICTORIA)

165. On, or about, June 7, 2018 and on a prior occasion within the prior thirty days, VICTORIA posted the statement on Facebook, including on and in DTD, thus published the statement on Facebook, and did so with the intent that many others would read the statement and republish the statement to others, "[w]ow - i didnt know reviews could be deleted at the whim of the page owner. Is there a point to the star rating if it can just be manipulated and undesirable feedback eliminated? Well i will share my review again and see how long it lasts this time. I continue to be horrified by 'Danny The Doula''s appalling conduct on his page and across various doula groups. I have seen vast and shocking accounts of harrassment [*sic*] and grooming of vulnerable women. My greatest concern is still 'Danny The Doula''s use of Marissa's personal birth photo on his page. Marissa commented four times below the photo for it to be deleted as she never gave her permission for its use. These comments have been removed, however i still have an original photo of two of them which i have linked below. Abusing and silencing women, especially whilst profiting from them for your so-called doula business, is utterly unacceptable and frankly disgusting You may delete my review again, but your lack of integrity is catching up with you either way. May you learn to truly love and honour [*sic*] women." (**VICTORIA's SET OF DEFAMATORY STATEMENTS**)

### 22. Defendant, Vivian Chau Best (BEST)

Fourth Amended Complaint and
Demand for Jury Trial

166. At all relevant times including 2018 to the present, a Facebook group existed and exists, that had and has, thousands of members. The Facebook Group WLS PSI Hawaii. Only Facebook users who lived in Hawai'i were permitted to be part of the group and thus all persons who were members of WLS PSI Hawaii were fully aware that the other members of WLS PSI Hawaii were residents of Hawaii.

167. BEST was a member of WLS PSI Hawaii and BEST sent direct messages regarding plaintiff to other members of WLS PSI Hawaii warning the other members of WLS PSI Hawaii to not have any contract with plaintiff.

168. On June 3, 2018, BEST warned hundreds of WLS PSI Hawaii members, "[i]n case you come across him, please don't accept a friend request from Danny Gallagher. I just found out some very upsetting information about someone who has many PSI friends in common with me. I had to let you know. Warning. Danny Gallagher is a predator who has infiltrated the birth world and needs to be removed immediately. He has been removed from the big groups and the admins of Doula Talk are reporting him to his certifying board. He has been caught victimizing women and his scheme has been exposed. He trawls birth groups for women who are insecure or unstable in terms of their financial security, self esteem or in need of sexual validation. He contacts them privately, wins their trust, makes enticing promises, and grooms them to provide naked photos of themselves to sell to a select audience of men. He's the broker. He is a predatory pimp, he is not a doula. He has harassed a number of women online to sell them their used panties. This has all been confirmed. I see that we have many internet friends in common who are PSI grads and wanted you to know. This is very serious, he is a

Fourth Amended Complaint and
Demand for Jury Trial

sexual predator and is dangerous. Please help me in shutting this shit down." (**BEST's FIRST SET OF DEFAMATORY STATEMENTS)**

169.   On June 3, 2018, BEST began to directly contact plaintiff's Facebook friends as BEST was one of plaintiff Facebook friends and could access plaintiff's friends list.  On June 3, 2018, BEST directly messaged two of plaintiff's Facebook friends and two thousand of plaintiff's other friends, "[h]i [Name]! I just found out some very upsetting information about one of our mutual friends. I had to let you know. Warning. Danny Gallagher is a predator who has infiltrated the birth world and needs to be removed immediately . He has been removed from the big groups and the admins of Doula Talk are reporting him to his certifying board. He has been caught victimizing women and his scheme has been exposed. He trawls birth groups for women who are insecure or unstable in terms of their financial security, self esteem or in need of sexual validation. He contacts them privately, wins thei r trust, makes enticing promises, and grooms them to provide naked photos of themselves to sell to a select audien ce of men. He's the broker. He is a predatory p mp, he is not a doula. He has har assed a number of iwomen online to sell them their used panties. This has all been confirmed • I see that you're internet friends with him and wanted you to know. This is very serious, he is a sexual predator and is dangerous. Please help me in shutting this shit down." (**BEST's SECOND SET OF DEFAMATORY STATEMENTS)**

170.   On the same day, as to a few of plaintiff's Facebook friends who attempted to defend Plaintiff, BEST continued directly messaging plaintiff's Facebook friends with, "[h]e is not a good person. He takes advantage of vulnerable women and is highly manipulative. You don't

know me, so you don't have to trust my opinion at all. I never met him. I just know that he's had some questionable experiences with many women and don't like the word on the street about him. I would stay away from interacting with him. period. There are great photographers out there without awful reviews." (**BEST's THIRD SET OF DEFAMATORY STATEMENTS)**

171.   On the same day, as to others who were plaintiff's Facebook friends who attempted to defend Plaintiff, BEST continued directly messaging plaintiff's Facebook friends with "I gave you my honest response. I don't know either of you. You don't have to believe me. But I urge you to be wary. He gaslights women. Period. I have read a conversation between him and a friend on her phone and was astounded by how quickly his communications turned mean and ugly. It has nothing to do with his photo skills. He works with vulnerable women and takes advantage of them. What I saw were screenshots of him talking women into taking pornographic photos. He offers discounts to vulnerable women, and then tries to get them to take naked photos. It's not "empowerment" when he's then turning around and selling them to porn site. That has been a strategy that has gotten him removed from many pages, and warned about across mom groups. It has been a little while, and perhaps he's improved his former behavior. I am a stand for women, for mothers, and for sharing of useful information. I wouldn't consider working with him based on his reputation." (**BEST's FOURTH SET OF DEFAMATORY STATEMENTS)**

172.   To same set of thousands of plaintiff's Facebook friends, BEST directly messaged them that "I have heard too many stories to want to send anyone to work with him. I don't even live in Hawaii anymore

…[plaintiff] was having weird and pornographic conversations with others." (**BEST's FIFTH SET OF DEFAMATORY STATEMENTS)**

173. From April 7, 2019 to through April 17, 2019, BEST made the same statements as those set forth in the above paragraphs to plaintiff's Facebook friends by direct message, i.e., BEST'S FIRST SET OF DEFAMATORY STATEMENTS through BEST'S FIFTH SET OF DEFAMATORY STATEMENTS. (**BEST's SIXTH SET OF DEFAMATORY STATEMENTS)**

174. BEST was conspicuously warning residents who she knew lived in Hawai'i, i.e., Facebook group members and plaintiff's Facebook friends who lived in Hawaii, and that BEST was safe from plaintiff because she no longer lived in Hawai'i and Best was doing some kind of service to Hawai'i residents by warning them of plaintiff, who she knew as sexual predator who lived among the Hawaiians.

**B.    Innuendo, Inducement and Colloquium**

175. Each of the defamatory statements, i.e., those defined with all capital letters described above, falsely accused plaintiff of being deceptive in his careers, occupations and professions, including as a doula and a photographer.

176. Each of the defamatory statements, i.e., those defined with all capital letters above, falsely accused plaintiff of rape, attempted murder, sexual exploitation, prostitution, "pimping" and/or sexual harassment which as described in each of the defamatory statements are felonies in all jurisdictions in the United States and otherwise serious violent offences.

177. All of the defendants referenced above made the defamatory statements, i.e., those defined with all capital letters above, with authority, in that Defendants defamatory statements were apparently

Fourth Amended Complaint and
Demand for Jury Trial

factually based and any opinion that defendants had were based on defendants' independent verification and having superior knowledge.

178. Additionally, defendants were fully aware that those persons that would read, and did read, Defendants defamatory statements, i.e., those defined with all capital letters above, would regard and consider defendants as being in a position of superior knowledge, thus creating and manufacturing an umbrella of truth and validity in Defendants defamatory statements.

179. From the history of posts that are accessible to anyone using the Internet, and especially those of the thousands of persons, including defendants, and each of them, all of whom reviewed the past linked and related statements on the Facebook identity, "DannytheDoula", "radfem –exposing" "The Doula Group", inter alia, t is clear to those thousands of persons that the defamatory statements i.e., those defined with all capital letters above, that defendants, and each and every one of them, were referring to the Facebook posts that began on or about  June 1, 2017, and those that occurred immediately before and after MATWISE's SET OF DEFAMATORY STATEMENTS accusing Gallagher, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to

68

become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

180. Prior to defendants publishing each and any of their defamatory statements, i.e., those defined with all capital letters above, the term "groomed" was referenced in other Social Media discussion groups that any and each of the defendants participated. "Groomed" was understood by defendants and the readers of Defendants defamatory statements as referring to Gallagher's "victims" who were the object of plaintiff (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to

69

and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers. That is to say that the term "groomed" was familiar to both the defendant making the above described defamatory statements and the person reading the term in the defamatory statements

181. Defendants defamatory statements, i.e., those defined with all capital letters above, were understood by the thousands of persons who did review defendants defamatory statements to mean that it was wrong and a factual mistake for any person to discount or disbelieve the persons accusing Gallagher, *inter alia*, of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and

Fourth Amended Complaint and
Demand for Jury Trial

photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers, and that the accusations were in fact true.

182. Prior to publishing each and any of the defamatory statements alleged above, i.e., those defined with all capital letters above, defendants, and each of them, knowingly did absolutely nothing to determine, or otherwise verify the truth of the implications of any and all of the defamatory statements defendants leveled against Gallagher.

Fourth Amended Complaint and
Demand for Jury Trial

183. In fact all of the defendants were warned by many persons, that the accusations leveled against plaintiff were untrue and to proceed with caution in further disseminating the false accusations.

184. Prior to publishing each and all of the defamatory, i.e., those defined with all capital letters above, defendants, and each of them, knew that the accusations were false, however still published the defamatory statements, and have since continued to publish the defamatory statements to other persons, on social media, and directly to each and all of defendants' family, friends, business acquaintances and persons and who do not have any prior knowledge of plaintiff, i.e., indiscriminately to whomever will listen, may use the Internet and has the ability to read Defendants defamatory statements, which was, and is, each and every one of the defendants' intention.

185. Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

186. Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

187. Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

188. Moreover, by each and every defendant publishing the defamatory statements, each and every defendant outwardly ratified, endorsed, approved, consented, confirmed and validated the accusations made

Fourth Amended Complaint and
Demand for Jury Trial

by MATWISE, that is to say, that Gallagher *inter alia*, (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

189.  The context of these defamatory statements of and concerning plaintiff is that all, of the defamatory statements were made by each and every defendant knowing that the listeners and readers had participated in past, or ongoing, discussions concerning plaintiff and

that defendants' defamatory statements were intended by defendants to mean and that the listeners and readers would understand, and did understand, that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

## I.CLAIM I

(Libel against all Defendants and Does 1 through 10)

Fourth Amended Complaint and
Demand for Jury Trial

190. Plaintiff incorporates by reference paragraphs 1 through 189 as though fully set forth herein.

191. Defendants made and published the defamatory statements as specifically described above and herein,

(1) MATWISE's publication of MATWISE's SET OF DEFAMATORY STATEMENTS;

(2) CROUDACE's publication of MATWISE's SET OF DEFAMATORY STATEMENTS;

(3) HOPAKI's publication of HOPAKI's FIRST SET OF DEFAMATORY STATEMENTS;

(4) HOPAKI's publication of HOPAKI's SECOND SET OF DEFAMATORY STATEMENTS;

(5) SALDAYA'S publication of SALDAYA's FIRST SET OF DEFAMATORY STATEMENTS;

(6) SALDAYA's publication of SALDAYA's SECOND SET OF DEFAMATORY STATEMENTS;

(7) SALDAYA's publication of SALDAYA's THIRD SET OF DEFAMATORY STATEMENTS;

(8) SALDAYA's publication of  SALDAYA's FOURTH SET OF DEFAMATORY STATEMENTS;

(9) AUGHENBAUGH's publication of AUGHENBAUGH's FIRST SET OF DEFAMATORY STATEMENTS;

(10) AUGHENBAUGH's publication of AUGHENBAUGH's SECOND SET OF DEFAMATORY STATEMENTS;

(11) AUGHENBAUGH's publication of AUGHENBAUGH's THIRD SET OF DEFAMATORY STATEMENTS;

(12) CHIDESTER's publication of CHIDESTER's FIRST SET OF DEFAMATORY STATEMENTS;

Fourth Amended Complaint and Demand for Jury Trial

(13) CHIDESTER's publication of CHIDESTER's SECOND SET OF DEFAMATORY STATEMENTS;

(14) BYERS' publication of BYERS' FIRST SET OF DEFAMATORY STATEMENTS;

(15) BYERS' publication of BYERS' SECOND SET OF DEFAMATORY STATEMENTS;

(16) KIRILLOV's publication of KIRILLOV's SET OF DEFAMATORY STATEMENTS;

(17) LAJOIE's publication of LAJOIE's FIRST SET OF DEFAMATORY STATEMENTS;

(18) LAJOIE's publication of LAJOIE's SECOND SET OF DEFAMATORY STATEMENTS;

(19) LUND's publication of LUND's SET OF DEFAMATORY STATEMENTS;

(20) PAVLOVSKY's publication of PAVLOVSKY's FIRST SET OF DEFAMATORY STATEMENTS;

(21) PAVLOVSKY's publication of PAVLOVSKY's SECOND SET OF DEFAMATORY STATEMENTS;

(22) WALZ's publication of WALZ's FIRST SET OF DEFAMATORY STATEMENTS;

(23) WALZ's publication of WALZ's SECOND SET OF DEFAMATORY STATEMENTS;

(24) BOULTER's publication of BOULTER's FIRST SET OF DEFAMATORY STATEMENTS;

(25) BOULTER's publication of BOULTER's SECOND SET OF DEFAMATORY STATEMENTS;

(26) WHRITENOUR's publication of WHRITENOUR's SET OF DEFAMATORY STATEMENTS;

Fourth Amended Complaint and
Demand for Jury Trial

(27) BROOKS' publication of BROOKS' SET OF DEFAMATORY STATEMENTS;

(28) RAYMOND's publication of RAYMOND's FRIST SET OF DEFAMATORY STATEMENTS;

(29) RAYMOND's publication of RAYMOND's SECOND SET OF DEFAMATORY STATEMENTS;

(30) YOUNG's publication of YOUNG's FIRST SET OF DEFAMATORY STATEMENTS;

(31) YOUNG's publication of YOUNG's SECOND SET OF DEFAMATORY STATEMENTS;

(32) YOUNG's publication of YOUNG's THIRD SET OF DEFAMATORY STATEMENTS;

(33) YOUNG's publication of YOUNG's FOURTH SET OF DEFAMATORY STATEMENTS;

(34) YOUNG's publication of YOUNG's FIFTH SET OF DEFAMATORY STATEMENTS;

(35) DESCHAMPS' publication of DESCHAMPS' SET OF DEFAMATORY STATEMENTS;

(36) BELL's publication of BELL's FIRST SET OF DEFAMATORY STATEMENTS;

(37) BELL's publication of BELL's SECOND SET OF DEFAMATORY STATEMENTS;

(38) GWIZD's publication of GWIZD's SET OF DEFAMATORY STATEMENTS;

(39) LEPPARD-WESTHAVER's publication of LEPPARD-WESTHAVER's SET OF DEFAMATORY STATEMENTS;

(40) VICTORIA's publication of VICTORIA's SET OF DEFAMATORY STATEMENTS.

Fourth Amended Complaint and
Demand for Jury Trial

(41)BEST's publication of BEST's FIRST SET OF DEFAMATORY
    STATEMENTS;

(42)BEST's publication of BEST's SECOND SET OF DEFAMATORY
    STATEMENTS;

(43)BEST's publication of BEST's THIRD SET OF DEFAMATORY
    STATEMENTS;

(44)BEST's publication of BEST's FOURTH SET OF DEFAMATORY
    STATEMENTS;

(45)BEST's publication of BEST's FIFTH SET OF DEFAMATORY
    STATEMENTS;

(46)BEST's publication of BEST's SIXTH SET OF DEFAMATORY
    STATEMENTS;

192. All defendants used at least Facebook, including on and in DTD and
    MIM, to write, and thereby publish, the defamatory statements
    described above and incorporated by reference herein, which
    included, that plaintiff (1) furthered and promoted pornography in a
    manner that violated the ethical and professional practices adhered to
    and expected of doulas and photographers; (2) was a sexual predator
    acting in a manner that, and thereby, violated the ethical and
    professional practices of doulas and photographers and also violated
    criminal statutes; (3) enticed others to participate in pornography
    because of the possibility of financial gain and plaintiff did so in a
    manner that violated the ethical and professional practices adhered to
    and expected of doulas and photographers; (4) strongly encouraged
    pregnant women and others to become involved in selling
    pornography in a manner that violated the ethical and professional
    practices adhered to and expected of doulas and photographers; (5)
    was dishonest in his practice as a doula for plaintiff's sexual

gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

193. All defendants did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

194. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook and the other social media websites used to publish defendants' defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide.

195. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook had a membership of approximately two billion persons and that by publishing their defamatory statements, the defamatory statements would be read by hundreds to thousands of Facebook's membership.

196. Prior to publishing their defamatory statements, all defendants were fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after

79

defendants did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons.

197. All defendants published the defamatory statements described above and incorporated by reference herein fully aware that plaintiff lived in Hawai'i and that plaintiff was a professionally practicing doula and photographer in the state of Hawai'i.

198. All defendants were fully aware that Defendants defamatory statements described above and incorporated by reference herein would cause a negative effect on plaintiff professionally practicing as a doula and photographer, i.e., defendants intended that their defamatory statements would prevent plaintiff from professionally practicing as a doula and photographer. In addition, defendants were fully aware that because of their defamatory statements, plaintiff's reputation would be damaged in the community in Hawai'i and the virtual community located in the world-wide-web.

199. It was, is, and has always been, untrue, and false, that plaintiff 1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that

80

violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

200. Defendants' defamatory statements were not privileged and plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements.

201. Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

202. Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

203. Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and

Fourth Amended Complaint and
Demand for Jury Trial

investigation as to whether or not the defamatory statements were true or false.

204. The hundreds to thousands of person who did read defendants' defamatory statements on Facebook and other social media websites understood that the defamatory statements to be of and concerning plaintiff and were understood by the hundreds to thousands of persons to mean that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in

82

his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

205. Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that plaintiff was a professionally practicing doula and photographer in Hawai'i,

   (1) The defamatory statements tended to injure plaintiff in his occupations as a doula and photographer, and otherwise injure plaintiff whether or not plaintiff was a doula or photographer;

   (2) The defamatory statements exposed plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in Hawai'i; (2) persons involved and interested in the doula community and matters concerning doula; (3) persons who were involved and interested in photography; and (4) those persons using the world-wide-web interested in plaintiff, doulas and/or photography; and

   (3) The defamatory statements discouraged others from associating or dealing with plaintiff.

206. Defendants knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others.

207. Defendants' defamatory statements caused plaintiff to lose employment and income.

208. Defendants' defamatory statements caused plaintiff's Hawaiian and virtual community to shun him, avoid him and hate him and further caused plaintiff's Hawaiian and virtual community to stop being his

Fourth Amended Complaint and
Demand for Jury Trial

friend, stop following him, or otherwise end any, and all, connection and association to plaintiff.

209. Plaintiff's personal and professional reputation was harmed as a result of defendants' defamatory statements and such reputation is continuing to be harmed because defendants continue to make the same defamatory statements as described and continue to permit the defamatory statements to go viral on social media websites.

210. Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

211. Plaintiff was damaged as set forth below and as follows,

WHEREFORE plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

## II.CLAIM II

(Libel Per Se against all defendants and Does 1 through 10)

212. Plaintiff incorporates by reference paragraphs 1 through 211 as though fully set forth herein.

213. Defendants made and published the defamatory statements as specifically described above, which among other things falsely accused plaintiff of committing a crime that was a felony.

214. All defendants used at least Facebook to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and

Fourth Amended Complaint and
Demand for Jury Trial

photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

215. All defendants did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

216. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook and the other social media websites used to publish defendants' defamatory statements described above and incorporated by reference herein had members and subscribers

Fourth Amended Complaint and
Demand for Jury Trial

located worldwide.

217. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook had a membership of approximately two billion persons and that by publishing their defamatory statements, the defamatory statements would be read by hundreds to thousands of Facebook's membership.

218. Prior to publishing their defamatory statements, all defendants were fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendants did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons.

219. All defendants published the defamatory statements described above and incorporated by reference herein fully aware that plaintiff lived in Hawai'i and that plaintiff was a professionally practicing doula and photographer in the state of Hawai'i.

220. All defendants were fully aware that Defendants defamatory statements described above and incorporated by reference herein would cause a negative effect on plaintiff professionally practicing as a doula and photographer, i.e., defendants intended that their defamatory statements would prevent plaintiff from professionally practicing as a doula and photographer. In addition, defendants were fully aware that because of their defamatory statements, plaintiff's reputation would be damaged in the community in Hawai'i and the virtual community located in the world-wide-web.

221. It was, is, and has always been, untrue, and false, that plaintiff 1)

Fourth Amended Complaint and
Demand for Jury Trial

furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

222.  Defendants' defamatory statements were not privileged and plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements.

Fourth Amended Complaint and
Demand for Jury Trial

223. Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

224. Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

225. Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

226. The hundreds to thousands of person who did read defendants' defamatory statements on Facebook and other social media websites understood that the defamatory statements to be of and concerning plaintiff and were understood by the hundreds to thousands of persons to mean that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and

88

photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

227. Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that plaintiff was a professionally practicing doula and photographer in Hawai'i,

   (1) The defamatory statements tended to injure plaintiff in his occupations as a doula and photographer, and otherwise injure plaintiff whether or not plaintiff was a doula or photographer;

   (2) The defamatory statements exposed plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in Hawai'i; (2) persons involved and interested in the doula community and matters concerning doula; (3) persons who were involved and interested in photography; and (4) those persons using the world-wide-web interested in plaintiff, doulas and/or photography; and

   (3) The defamatory statements discouraged others from associating or dealing with plaintiff.

228. Defendants knew that the listeners and readers of the defamatory

statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others.

229. Defendants' defamatory statements caused plaintiff to lose employment and income.

230.  Defendants' defamatory statements caused plaintiff's Hawaiian and virtual community to shun him, avoid him and hate him and further caused plaintiff's Hawaiian and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to plaintiff.

231. Plaintiff's personal and professional reputation was harmed as a result of defendants' defamatory statements and such reputation is continuing to be harmed because defendants continue to make the same defamatory statements as described and continue to permit the defamatory statements to go viral on social media websites.

232. Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

233. Plaintiff was damaged as set forth below and as follows,

WHEREFORE plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

### III.CLAIM III

(Trade Libel against all defendants and Does 1 through 10)

Fourth Amended Complaint and
Demand for Jury Trial

234.  Plaintiff incorporates by reference paragraphs 1 through 233 as though fully set forth herein.

235.  Defendants made and published the defamatory statements as specifically described above, which among other things falsely accused plaintiff of committing rendering unprofessional and substandard services as a doula and photographer using the services to violated plaintiff's clients' rights.

236.  All defendants used at least Facebook to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated

91

the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

237. All defendants did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

238. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook and the other social media websites used to publish defendants' defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide.

239. Prior to publishing their defamatory statements, all defendants were fully aware that Facebook had a membership of approximately two billion persons and that by publishing their defamatory statements, the defamatory statements would be read by hundreds to thousands of Facebook's membership.

240. Prior to publishing their defamatory statements, all defendants were fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendants did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons.

241. All defendants published the defamatory statements described above and incorporated by reference herein fully aware that plaintiff lived in

Hawai'i and that plaintiff was a professionally practicing doula and photographer in the state of Hawai'i.

242. All defendants were fully aware that Defendants defamatory statements described above and incorporated by reference herein would cause a negative effect on plaintiff professionally practicing as a doula and photographer, i.e., defendants intended that their defamatory statements would prevent plaintiff from professionally practicing as a doula and photographer. In addition, defendants were fully aware that because of their defamatory statements, plaintiff's reputation would be damaged in the community in Hawai'i and the virtual community located in the world-wide-web.

243. It was, is, and has always been, untrue, and false, that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby,

Fourth Amended Complaint and
Demand for Jury Trial

violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

244. Defendants' defamatory statements were not privileged and plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements.

245. Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

246. Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

247. Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

248. The hundreds to thousands of person who did read defendants' defamatory statements on Facebook and other social media websites understood that the defamatory statements to be of and concerning plaintiff and were understood by the hundreds to thousands of

Fourth Amended Complaint and
Demand for Jury Trial

persons to mean that plaintiff (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

249. Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that plaintiff was a professionally practicing doula and photographer in Hawai'i,

(1) The defamatory statements tended to injure plaintiff in his occupations as a doula and photographer, and otherwise injure plaintiff whether or not plaintiff was a doula or photographer;

(2) The defamatory statements exposed plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in Hawai'i; (2) persons involved and interested in the doula community and matters concerning doula; (3) persons who were involved and interested in photography; and (4) those persons using the world-wide-web interested in plaintiff, doulas and/or photography; and

(3) The defamatory statements discouraged others from associating or dealing with plaintiff.

250. Defendants knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others.

251. Defendants' defamatory statements caused plaintiff to lose employment and income.

252. Defendants' defamatory statements caused plaintiff's Hawaiian and virtual community to shun him, avoid him and hate him and further caused plaintiff's Hawaiian and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to plaintiff.

253. Defendants knew that their defamatory statements would cause plaintiff's potential clients, clients, and other persons involved in the professional doula and professional photography community, would rely on the defendants' defamatory statements and cause financial

Fourth Amended Complaint and
Demand for Jury Trial

loss to plaintiff.

254. Plaintiff sustained harm to his businesses, professions and occupations as a result of the defamatory statements.

255. Plaintiff sustained financial harm because plaintiff's potential clients, clients, and other persons involved in the professional doula and professional photography community, did rely on defendants' defamatory statements.

256. In reliance on defendants' defamatory statements, plaintiff's potential clients, clients, and other persons involved in the professional doula and professional photography community did shun and disassociate themselves from plaintiff that was a substantial factor in plaintiff's financial harm.

257. Plaintiff was damaged as set forth below and as follows,

WHEREFORE plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

### IV.CLAIM IV

(False Light against all defendants and Does 1 through 10)

258. Plaintiff incorporates by reference paragraphs 1 through 257 as though fully set forth herein.

259. Defendants published the defamatory statements as specifically described above and incorporated herein and the statements showed plaintiff in a false light.

260. The false light was highly offensive to a reasonable person in plaintiff's position.

261. Defendants knew that the publication of the defamatory statements

Fourth Amended Complaint and
Demand for Jury Trial

would create a false impression that plaintiff, (1) furthered and promoted pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) was a sexual predator acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticed others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) strongly encouraged pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) was dishonest in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceived the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) was unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) was dishonest in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) was deceptive in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) was unethical in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

262. Defendants' defamatory statements were not privileged and plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements.

Fourth Amended Complaint and
Demand for Jury Trial

263. Prior to publishing the defamatory statements, defendants knew that publishing the defamatory statements would create a false impression about plaintiff.

264. Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

265. Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

266. Plaintiff sustained reputational and financial harm as result of defendants' publication of the defamatory statements.

WHEREFORE plaintiff requests that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements and any equitable relief based on principles that are fair and just.

## V.CLAIM V

(Intentional Infliction of Emotional Distress against all defendants and Does 1 through 10)

267. Plaintiff incorporates by reference paragraphs 1 through 266 as though fully set forth herein.

268. Defendants published the defamatory statements as specifically described above and incorporated herein.

269. Defendants' conduct was outrageous.

270. Defendants' conduct was intended by each of the defendants, or

99

carried out in reckless disregard, to cause plaintiff emotional distress.

271. Plaintiff suffered severe emotional distress.

272. Defendants' conduct was a substantial factor in causing plaintiff's emotional distress.

273. WHEREFORE plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

## **VI.CLAIM VI**

(Negligent Infliction of Emotional Distress against all defendants and Does 1 through 10)

274. Plaintiff incorporates by reference paragraphs 1 through 273 as though fully set forth herein.

275. Defendants published the defamatory statements as specifically described above and incorporated herein.

276. Prior to publishing the defamatory statements, defendants failed use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

277. Defendants were negligent.

278. Plaintiff suffered severe emotional distress.

279. Defendants' negligent conduct was a substantial factor in causing plaintiff's emotional distress.

WHEREFORE plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of plaintiff in

Fourth Amended Complaint and
Demand for Jury Trial

the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

### VII.CLAIM VII

(Injunctive Relief - against all defendants and Does 1 through 10)

280. Plaintiff incorporates by reference paragraphs 1 through 279 as though fully set forth herein.

281. Defendants have caused irreparable harm to plaintiff's businesses, in reputation, in income, in the goodwill in the businesses that no amount of damages could adequately compensate plaintiff for injuries he sustained, is sustaining and will sustain, because defendants defamatory statements continue to be posted on internet websites such as Facebook, and defendants continue to assert that the statements are true thereby destroying plaintiff's reputation and business in an ongoing and continuous manner.

282. Defendants continue to publish the defamatory statements on social media making it impossible for plaintiff to practice as a doula and a professional photographer and thus limiting plaintiff's income, making the harm ongoing.

283. Defendants' conduct is a substantial factor in plaintiff's ongoing harm.

284. Plaintiff prays this court for an order enjoining defendants, and each of them, from making and publishing any, and all, defamatory statements that accuse plaintiff of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others

101

to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

285. Plaintiff prays this court for an injunction ordering defendants, and each of them, to retract the defamatory statements and to take the defamatory statements down from the websites in which the statements were made and published, specifically defendants should retract and take down any, and all, defamatory statements made and published by defendants that accuse plaintiff of (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas

Fourth Amended Complaint and
Demand for Jury Trial

and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

## VIII. CLAIM VIII

(Declaratory Relief against Defendant and Does 1 through 10)

286. Plaintiff incorporates by reference paragraphs 1 through 285 as though fully set forth herein.

287. So that plaintiff may present to social media websites that the herein defamatory statements violate the terms and conditions of social media websites, if they do, regarding publication of false and defamatory statements that tend to harass and harm other persons, plaintiff prays that this this court to declare as false accusations of

103

Fourth Amended Complaint and
Demand for Jury Trial

plaintiff (1) furthering and promoting pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (2) being a sexual predator, acting in a manner that, and thereby, violated the ethical and professional practices of doulas and photographers and also violated criminal statutes; (3) enticing others to participate in pornography because of the possibility of financial gain and plaintiff did so in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (4) encouraging pregnant women and others to become involved in selling pornography in a manner that violated the ethical and professional practices adhered to and expected of doulas and photographers; (5) dishonesty in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (6) deceiving the public in his practice as a doula for plaintiff's sexual gratification, financial gain and self-interest; (7) being unethical in his practice as a doula in a manner that, and thereby, violated the ethical and professional practices of doulas; (8) dishonesty in his profession as photographer in a manner that, and thereby, violated the ethical and professional practices of photographers; (9) deception in his profession as a photographer for plaintiff's sexual gratification, financial gain and self-interest; and (10) unethical conduct in his profession as a photographer in a manner that, and thereby, violated the ethical and professional practices of photographers.

WHEREFORE, plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

Plaintiff, DANNY GALLAGHER, prays as to the first through eighth claims:

Fourth Amended Complaint and
Demand for Jury Trial

1.      Award plaintiff $100,000.00 in economic damages as to each
        defendant;

2.      Award plaintiff $5,000,000.00 as to each defendant in non-economic
        damages.

3.      Order and an injunction permanently restraining and enjoining
        defendants as set forth in the Seventh Claim including:

a. Preventing defendants from making and publishing the defamatory
   statements or any iteration of the defamatory statements as set forth
   above and herein;

b.  Ordering defendants to retract the defamatory statements as set forth
    above and herein;

c. Ordering defendants to direct any, and all, websites that defendants
   posted the defamatory statements as set forth above and herein, to
   delete he defamatory statements;

4.      Award plaintiff his actual damages;

5.      Award plaintiff his costs, attorneys fees, investigatory fees and
        expenses to the fullest extent provided by law;

6.      Award punitive and exemplary damages against defendant and in
        favor of plaintiff in the sum of $10,000,000.00 by reason of
        defendants', and each of them, malice, hatred, ill-will, despicable and
        intentional acts.

Fourth Amended Complaint and
Demand for Jury Trial

7.      Awarding plaintiff such additional and further relief as the Court

deems just and proper.

Dated:  Honolulu, Hawai'i May 09, 2019

UTZURRUM LAW OFFICES, A.P.C.


By: _____/s/ Joe Utzurrum_____

Joe Utzurrum, Attorney for plaintiff, DANNY

GALLAGHER

Fourth Amended Complaint and
Demand for Jury Trial

UTZURRUM LAW OFFICES, A.P.C.
Joe Utzurrum, Esq.              9834
7 Waterfront Plaza
500 Ala Moana Boulevard, Suite 400
Honolulu, Hawai'i 96813
Tele 808.587.7070
Email joe@ulawoffices.com

11620 Wilshire Blvd., Suite 900
Los Angeles, California 90025
Tele 310.887.1837

Attorneys for Plaintiff, DANNY
GALLAGHER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DANNY GALLAGHER, | CIVIL NO.: 1:18-cv-364-LEK-KJM |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| vs. | |
| MATERNITYWISE INTERNATIONAL LLC, ANNE CROUDACE, JANE HOPAKI, EMILEE SALDAYA, RACHAEL AUGHENBAUGH, JENNINFER CHIDESTER, STEPHANIE BYERS, , BETHANY KIRILLOV, SAMANTHA LAJOIE, AERIN LUND, KATE PAVLOVSKY, CHANNA JAYDE WALZ, MADDISON SISLEY BOULTER, ESME WHRITENOUR,  ADRIANNA BROOKS, NICOLETTE RAYMOND, | |

107

| JULIE BELL, CARA GWIZD, HOLLY LEPPARD-WESTHAVER, ELOISE VICTORIA, VIVIAN CHAU BEST, JANE DOE ONE, JANE DOE THREE, and DOES 1-10, inclusive, | ) ) ) ) ) ) |
|---|---|
| Defendants. | ) |

Plaintiff, DANNY GALLAGHER, hereby, by and through its counsel of record, request and demand that the case and matters therein be tried in front of a jury.

Dated:  Honolulu, Hawai'i May 09, 2019

UTZURRUM LAW OFFICES, A.P.C.

By: _____/s/ Joe Utzurrum_____
Joe Utzurrum, Attorney for plaintiff, DANNY GALLAGHER

Fourth Amended Complaint and
Demand for Jury Trial