McCORRISTON MILLER MUKAI MacKINNON LLP

NADINE Y. ANDO        3158-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawai'i 96813
Telephone: (808) 529-7300
Facsimile: (808) 524-8293
E-mail:    ando@m4law.com

Attorney for Defendants
VIVIAN CHAU BEST and EMILEE SALDAYA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| DANNY GALLAGHER, | ) | CIVIL NO. 18-00364 LEK-KJM |
|---|---|---|
| Plaintiff, | ) | (Other Action) |
| vs. | ) | |
| | ) | DEFENDANT VIVIAN CHAU BEST'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANT'S MOTION TO DISMISS [F.R.C.P. 12(b)(6)], FILED OCTOBER 28, 2019 [DKT. 117]; CERTIFICATE OF SERVICE |
| MATERNITYWISE INTERNATIONAL, ANNE CROUDACE, JANE HOPAKI, EMILEE SALDAYA, RACHAEL AUGHENBAUGH, JENNIFER CHIDESTER, STEPHANIE BYERS, BETHANY KIRILLOV, SAMANTHA LAJOIE, AERIN LUND, KATE PAVLOVSKY, CHANNA JAYDE WALZ, MADDISON SISLEY BOULTER, ESME WHRITENOUR, ADRIANNA BROOKS, NICOLETTE RAYMOND, JULIE BELL, CARA GWIZD, HOLLY LEPPARD-WESTHAVER, ELOISE VICTORIA, VIVIAN CHAU BEST, JANE DOE ONE, JANE DOE THREE, and DOES 1-10, *inclusive*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Hearing: Date: February 21, 2020 Time: 9:45 a.m. Judge: Honorable Leslie E. Kobayashi Trial Date: October 13, 2020 |

404798.2

|                           |   |
|---------------------------|---|
|                           | ) |
| Defendants.               | ) |
| _____     | ) |

### DEFENDANT VIVIAN CHAU BEST'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANT'S MOTION TO DISMISS [F.R.C.P. 12(b)(6)], FILED OCTOBER 28, 2019 [DKT. 117]

Defendant VIVIAN CHAU BEST ("***Best***"), through her counsel McCorriston Miller Mukai MacKinnon LLP, respectfully submits this memorandum in opposition to Plaintiff's and Counterdefendant's Motion to Dismiss [F.R.C.P. 12(b)(6)] filed by Plaintiff DANNY GALLAGHER ("***Plaintiff***") on October 28, 2019 ("***Motion***").

I.   INTRODUCTION

This matter is a defamation suit brought by Plaintiff, a self-proclaimed male doula, birth/maternity photographer and videographer, Certified Childbirth Educator, Certified Lactation Support Educator, and specialist in addiction recovery, home birth and waterbirth among other things.[1] In early 2017, Plaintiff embarked on an aggressive plan to brand himself as "Hawaii's first male doula" by building his online presence in the birth and maternity communities by becoming

---

[1] A "doula" is "a person trained to provide advice, information, emotional support, and physical comfort to a mother before, during, and just after childbirth." *See* https://www.merriam-webster.com/dictionary/doula.

active on various social media platforms (*i.e.*, Instagram, Snapchat, YouTube and Facebook) geared towards motherhood, childbirth and parenting. His efforts included targeting women who were active in these communities and joining or requesting to join numerous Facebook and other social media groups with the following (or variations of the following) back story:

> . . . My name is Danny—a media professional from Honolulu, Hawai'i. I'm half Japanese, half Irish and I grew up on the gorgeous island of O'ahu.
>
> I was surrounded by feminine energies from an early age. My father and mother worked during the day, so I was left in the care of my aunties. As midwifes and doulas, their days consisted of being surrounded by pregnancy, children and every so often, birth.
>
> Since I followed them everywhere, I was present for over 50 births from the age of 6 to 18. I was that little kid in the background that adored baby bellies and my best friends were pretty much all female. Yes, I'm straight. Yes, I know that's weird. I suppose I'm an anomaly?
>
> A little background.
>
> In 2010, my girlfriend and childhood sweetheart was pregnant with our twin daughters. I was so excited to be a dad! Unfortunately, she was dealing with severe depression and in a moment of weakness, decided to end her life two feet away from me. With her as their vessel, came the inevitable passing of our seven month old baby girls.
>
> I was devastated.
>
> For the following four years, I went through it all. I gained an insane amount of weight, going from 230 lbs (105 kgs) to 340 lbs (155 kgs) in six months. I became addicted to drugs and alcohol to numb the images of her suicide from my mind. Ultimately, I ended up on the streets—sleeping on cardboard and eating out of garbage cans.

> One day, as I was slumped up under a highway overpass, one of my homeless friends (female) went into labor. Everyone else panicked, but because I had seen it so many times, I delivered the baby myself. I'm sure not everything I did was totally safe, but I knew enough to help her in her time of need.
>
> In the minutes prior to the birth, I was a shell of a man. Depressed, suicidal and physically dying. But as I watched her cry tears of pain (during birth) and tears of joy (after birth), I realized I was crying too. In that moment, I had experienced a metaphorical rebirth of my own.
>
> Fast forward seven years.
>
> I am happy, healthy, and with the support of some friends, I have decided to become a male doula. I do creative work with a local midwifery brand and have since started doing maternity shoots and birth photography. So why not become a doula, too? Whether or not I practice as one actively, I believe I will be able to support the women in my life in ways that most others cannot.
>
> And when I find that special someone to start a family with, I want to make absolutely certain that I can be her rock—her loving fortress of safety and security. In her moments of sacrifice, I will happily hold her up and wipe the sweat from her brow, while she brings our coalescence of love into the world.
>
> It's the least I can do for her and our babies.

After becoming a member in several Facebook Groups, Plaintiff would often post about controversial issues such as unassisted birth, water births and breastfeeding. Plaintiff also claimed to be an advocate for women and posted in Facebook about his views promoting body positivity and applauded mothers and expectant mothers who were "confident" enough to share nude photos and videos of themselves in exchange for money. Plaintiff had a polarizing effect and while

404798.2                                4

some women welcomed Plaintiff into the birth and maternity social media communities, others felt uncomfortable by his posts and comments. When he received positive reactions from women who were either expecting or had just given birth, he asked that they contact him privately, offered them free photography/videography services, and requested that they meet. However, when women were not receptive or declined his services, he became angry.

As Plaintiff's online presence became more widespread, women began to contact the administrators of certain Facebook Groups or post on the Facebook Group's newsfeed and shared their personal experiences with Plaintiff that made them uncomfortable or which caused them to doubt his motives in joining the various birth and maternity Facebook Groups. Concerned women then reposted other women's posts or directly messaged their Facebook friends to inform them of the increasing concerns about Plaintiff and his actions towards certain women.

As one of the recipients of this information concerning the safety and welfare of women and mothers, Defendant Best posted in the private "WLS PSI Hawaii" Facebook Group and directly reached out to Facebook friends who Best and Plaintiff had in common.

Plaintiff then filed a lawsuit against Defendant Best (along with approximately a dozen other women), alleged that she and other women had defamed him, and claimed that he was entitled to an award of millions of dollars

from each of these women.  Plaintiff then went public and posted information about the lawsuit on social media sites and in private messages to women and mothers as a warning that those who would dare to speak out against him could also be sued and owe him millions of dollars.

The Complaint has since been amended four times to now include twenty-two women defendants.  Plaintiff's aggressive pursuit of his meritless claims through the court system is a thinly-veiled attempt to disguise his real agenda—a vengeful campaign to silence other women and make Defendants who did not accept him or expressed concerns about his intentions pay for daring to speak out against him.

Plaintiff now seeks to dismiss Defendant Best's Counterclaim.  This Court should deny Plaintiff's Motion because Defendant Best sufficiently alleged that: (1) Plaintiff initiated this lawsuit with an ulterior purpose—to harass, intimidate, and silence her and other women from exercising their right to free speech, and to extort significant amounts of money from each of the Defendants; and
(2) Plaintiff's claim that he is entitled to millions of dollars from the Defendants—in violation of Hawaii's statutory prohibition against *ad damnum* clauses in civil tort actions—constitutes a willful act that is distinct from the use of process itself.

Accordingly, Plaintiff's Motion should be denied.

II.     RELEVANT BACKGROUND

On September 25, 2018, Plaintiff filed a Complaint against more than a dozen women who he alleged made defamatory statements about him on social media sites.[2]  Plaintiff's claims include:

| | |
|---|---|
| Count I | Libel |
| Count II | Libel Per Se |
| Count III | Trade Libel |
| Count IV | False Light |
| Count V | Intentional Infliction of Emotional Distress |
| Count VI | Negligent Infliction of Emotional Distress |
| Count VII | Permanent Injunction |
| Count VIII | Declaratory Relief |

*See* Complaint [Dkt. #79].

On October 7, 2019, Defendant Best filed her Answer and Counterclaim and asserted an abuse of process claim against Plaintiff.  *See* Defendant Best's Answer to Plaintiff's Fourth Amended Complaint for Damages and Demand for Jury Trial, Filed May 8, 2019, filed on October 7, 2019 ("***Counterclaim***") [Dkt. # 111].

On October 28, 2019, Plaintiff filed a Motion to Dismiss and argued:

> Plaintiff's [sic.] fails to plead sufficient facts upon which relief can be granted for her abuse of process claim that falls short of the requirements of Ashcroft v. Iqball, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), since there is no act alleged of something more than plaintiff's filing of a lawsuit.

---

[2] Plaintiff thereafter filed amended complaints.  Unless otherwise specified, references to the "***Complaint***" shall refer to Plaintiff's Fourth Amended Complaint for Damages and Demand for Jury Trial, filed on May 22, 2019 [Dkt. # 79].

*See* Motion at 2 [Dkt. # 117].

III. <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Federal Rules of Civil Procedure ("***FRCP***") 12(b)(6), Defendant Best's Counterclaim must simply provide "a short and plain statement" that "contain[s] sufficient factual matter . . . to state a claim to relief that is plausible on its face." *See Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048 (9th Cir. 2012). A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as a motion to dismiss a complaint. *See AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. 2015).

Under Rule 12(b)(6), in ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true the allegations contained in the complaint (or in this case, the counterclaim) and view them in a light most favorable to the claimant. *See Fuchs v. Tokyu Corp.*, 181 F. Supp. 2d 1131, 1132 (D. Haw. 2001). Thus, the counterclaim must stand unless it appears beyond doubt that the claimant has alleged no facts that would entitle him to relief. *Id*.

IV. <u>DISCUSSION</u>

A counterclaim may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable

legal theory.  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984).  A counterclaim asserting an abuse of process claim should not be dismissed if it contains the necessary elements and sufficient facts for an abuse of process claim.

The two essential elements in a claim for abuse of process are:  "(1) an ulterior purpose and (2) a willful act in the use of the process which is not proper in the regular conduct of the proceeding."  *Chung v. McCabe Hamilton & Renny Co.*, 109 Hawaiʻi 520, 529, 128 P.3d 833, 842 (2006) (citations omitted).  "Liability for abuse of process is imposed when the putative tortfeasor uses legal process primarily for an ulterior motive."  *Id.*

For the first element, ulterior purpose, the question is whether the defendant used legal process "primarily" for a purpose that was not legitimate.  *See Isobe v. Sakatani*, 127 Hawaiʻi 368, 381, 279 P.3d 33, 46 (Ct. App. 2012) (internal citations removed).  For the second element, a willful act, the Hawaiʻi Supreme Court has explained that:

> "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."

*Id.* (internal citations omitted).

404798.2                                                              9

Here, Defendant Best alleges both elements for an abuse of process claim and asserts allegations sufficient to support such a claim.

A.  Defendant Best Sufficiently Alleged Plaintiff's Ulterior Purpose.[3]

In her Counterclaim, Defendant Best alleged that Plaintiff filed the lawsuit to seek "millions of dollars from each of the defendants, including BEST, with the primary purpose to harass, embarrass, cause distress, and extort money from them."[4]  *See* Counterclaim [Dkt. # 111] at 6.  Defendant Best further alleged that Plaintiff's lawsuit is "an improper use of the legal system to intimidate and chill or curtail BEST, the other defendants, and other users of social media from exercising their right to free speech."  *Id*.  By threatening to and ultimately filing a lawsuit seeking millions of dollars from each of the defendant women, and then posting about the lawsuit on social media, Plaintiff has intentionally and effectively silenced not only Defendants but other women and mothers who would have, but

---

[3] It should be noted that nowhere in Plaintiff's Motion to Dismiss does he argue that Defendant Best's Counterclaim fails to satisfy the first element of an abuse of process claim—existence of an ulterior purpose.  *See generally*, Motion to Dismiss [Dkt. # 117].  Nonetheless, Defendant Best addresses such argument here.

[4] *See, e.g., Smith v. Hurd*, 699 F. Supp. 1433, 1437 (D. Haw. 1988), aff'd, 985 F.2d 574 (9th Cir. 1993) (denying the defendant's motion to dismiss the plaintiff's claim for abuse of process where it found the necessary elements for abuse of process were alleged where plaintiff argued that the alleged extortion or extraction of a monetary settlement constituted an improper collateral objective).

for fear of being named as a defendant in this lawsuit, shared their experiences and information about Plaintiff to other women and mothers.

Viewing the Counterclaim in the light most favorable to Defendant Best, and accepting the allegations as true, this Court should find that Defendant Best has sufficiently pled an ulterior purpose to satisfy the first element of the tort of abuse of process.

B. <u>Defendant Best Alleged a Willful Act Distinct from the Use of Process Itself.</u>

While Defendant Best agrees that the filing of a complaint in and of itself is not an abuse of process, intentionally violating Hawaii's prohibition of the *ad damnum* clause by stating the specific amount of damages ($15.1 million from each Defendant) to which he claims he will recover constitutes "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." *See Young v. Allstate Ins. Co.*, 119 Hawai'i 403, 414, 198 P.3d 666, 677 (2008) (citations and emphasis omitted).

Beyond the filing of the underlying action itself, Defendant Best alleged that Plaintiff's Complaint included a demand for "an award of $100,000 in economic damages, $5,000,000 in non-economic damages, and $10,000,000 in punitive damages, among other things, from each of the women and mothers that he sued." *See* Counterclaim [Dkt. # 117] at 5.

>Hawai'i Revised Statutes ("**HRS**") Section 663-1.3(a) provides:
>
>Notwithstanding any other provision of law, *in any action based on tort*, including a medical tort as defined in section 671-1, *to recover damages for personal injuries* or wrongful death, *no complaint, counterclaim, cross claim or third party claim nor any amendment to such pleadings shall specify the amount of damages prayed for* but shall contain a prayer for general relief, including a statement that the amount of damages is within the minimum jurisdictional limits of the court in which the action is brought.

(Emphasis added).

Given the clear mandate of HRS Sect. 663-1.3(a), the deliberate insertion of an *ad damnum* clause and the grossly inflated and unsubstantiated amount of damages that bear little relation to Plaintiff's claims or reasonable expectations of recovery, is a perversion of the process that cannot be condoned.

Moreover, Plaintiff's reliance on *Young* is misguided as that case is distinguishable from what is alleged in this case.  In *Young*, the plaintiff argued that the defendant insurance company's unreasonably low settlement offers satisfied the "willful act" element.  *See Young*, 119 Hawai'i at 414, 198 P.3d at 677.  Disagreeing with the plaintiff's argument, the Hawai'i Supreme Court reasoned that "[o]ffers to settle the claims at issue in a case are 'proper,' if not encouraged, in the regular conduct of proceedings."  *Id.*  Conversely, the process used here—including an *ad damnum* clause in his Complaint—is not only improper and discouraged, but statutorily prohibited.  *See* HRS § 663-1.3(a).

Furthermore, Defendant Best is a mother and former elementary school teacher that has never directly communicated or even met Plaintiff in person. *See* Counterclaim [Dkt. #111] at 2-3.  As with the other Defendant women, Defendant Best has limited resources and being forced to pay attorneys' fees and costs to defend herself against the claims brought by Plaintiff poses a financial hardship to her and her family.  Including a specific amount of $10 million for punitive damages from each Defendant is particularly indicative of a willful act since punitive damages awards are based on a Defendants' net worth.  Consequently, a reasonable inference can be drawn that Plaintiff included in his Complaint a specific request for damages in these amounts with the intention to "harass, embarrass, cause distress, and extort money" from Defendants or to intimidate and chill or curtail the free speech of Defendants and other women who are made aware of this lawsuit.

Plaintiff's willful inclusion of specified damages ($15.1 million from each defendant woman he sues) is a blatant violation of Hawaii's statutory prohibition of *ad damnum* clauses in civil tort actions.  Such violation could serve no other purpose but to intimidate the Defendant women to extort money—or worse, a retraction of their statements that Plaintiff may use to vindicate himself and to further promote himself on social media sites—and to silence them and other

women out of fear of being sued and forced to incur the expensive cost of defending themselves in litigation, which they cannot afford.

Accordingly, Best sufficiently alleged a willful act distinct from the use of process itself.

C. Defendant Best Should Be Permitted Leave to Amend Her Counterclaim Should This Court Be Inclined to Dismiss the Counterclaim.

"[I]t is black letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). This standard is so liberal that "a district court should grant leave to amend even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*); *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." (brackets, citation, and internal quotation marks omitted)).

Contrary to the clear law on this issue, and without presenting any argument that amendments to the Counterclaim would be futile, Plaintiff requests that this Court dismiss the Counterclaim "with prejudice." Motion at 5. A dismissal with prejudice at this stage, without providing Defendant Best the opportunity to amend,

is without support under the governing law.  *See Cegavske*, 800 F.3d at 1041.  This is especially true here where there is no clear legal guidance, let alone argument by Plaintiff, as to whether Plaintiff's violation of Hawaii's prohibition of *ad damnum* clause to harass, threaten and silence women who would otherwise exercise their right to free speech, constitutes a willful act distinct from the legal process itself.

Should this Court find that Defendant Best does not assert facts sufficient to allege an abuse of process claim, she requests leave to amend her Counterclaim.

V.    CONCLUSION

Viewing the Counterclaim in the light most favorable to Defendant Best and accepting the allegations and reasonable inferences drawn therefrom as true, this Court should find that Defendant Best's Counterclaim is sufficient to allege an abuse of process claim and deny Plaintiff's Motion to Dismiss.

DATED:  Honolulu, Hawai'i, January 31, 2020.

> */s/ Nadine Y. Ando*
> NADINE Y. ANDO
>
> Attorney for Defendants
> VIVIAN CHAU BEST and EMILEE SALDAYA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DANNY GALLAGHER,<br><br>        Plaintiff,<br><br>  vs.<br><br>MATERNITYWISE INTERNATIONAL, ANNE CROUDACE, JANE HOPAKI, EMILEE SALDAYA, RACHAEL AUGHENBAUGH, JENNIFER CHIDESTER, STEPHANIE BYERS, BETHANY KIRILLOV, SAMANTHA LAJOIE, AERIN LUND, KATE PAVLOVSKY, CHANNA JAYDE WALZ, MADDISON SISLEY BOULTER, ESME WHRITENOUR, ADRIANNA BROOKS, NICOLETTE RAYMOND, JULIE BELL, CARA GWIZD, HOLLY LEPPARD-WESTHAVER, ELOISE VICTORIA, VIVIAN CHAU BEST, JANE DOE ONE, JANE DOE THREE, and DOES 1-10, *inclusive*,<br><br>        Defendants. | CIVIL NO. 18-00145 JMS-RT<br>(Other Action)<br><br>CERTIFICATE OF SERVICE |

CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that on this date, a true and accurate copy of the foregoing was duly served via CM/ECF upon the following parties:

404798.2

JOE UTZURRUM, ESQ.
Utzurrum Law Offices, A.P.C.
7 Waterfront Plaza, Suite 400
500 Ala Moana Boulevard
Honolulu, Hawaiʻi 96813

Attorney for Plaintiff
DANNY GALLAGHER


ERIC A. SEITZ, ESQ.
DELLA A. BELATTI, ESQ.
GINA SZETO-WONG, ESQ.
JONATHAN M.F. LOO, ESQ.
KEVIN A. YOLKEN, ESQ.
Eric A. Seitz, Attorney at Law, A Law Corporation
820 Mililani Street, Suite 502
Honolulu, Hawaiʻi 96813

Attorneys for Defendants
MATERNITYWISE INTERNATIONAL, LLC,
ANNE CROUDACE, BETHANY ELLEN KIRILLOV,
AERIN LUND, KATE PAVLOVSKY,
STEPHANIE BYERS, JANE HOPAKI, and
MADDISON SISLEY BOULTER

DATED:  Honolulu, Hawaiʻi, January 31, 2020.


                                      */s/ Nadine Y. Ando*
                                      NADINE Y. ANDO

                                      Attorney for Defendants
                                      VIVIAN CHAU BEST and EMILEE
                                      SALDAYA